[Anniston Banking Co. v. Green.]

# Anniston Banking Co. *v.* Green.

### Ejectment.

(Decided November 23, 1916.   73 South. 81.)

1. **Mortgages; Statutes; Contract.**—The provisions of §§ 5384-94, Code 1907, covers mortgages as well as notes, bonds, bills, and other contracts for the payment of money, in fixing and defining the rights and liabilities of joint makers.

2. **Subrogation; Payment of Mortgage Debt by Surety.**—Under §§ 5385, 5394, Code 1907, the joint maker of a mortgage, who was merely surety for his brother, the other maker, to the extent of part of the mortgage debt, was entitled to transfer of the security upon payment, or would have been subrogated to the mortgage, whether there had been a transfer or not.

3. **Vendor and Purchaser; Record; Notice of Nature and Character of Debt.**—Where the mortgage on its face was a joint one, its registration was sufficient to put the purchaser of the land on notice or inquiry as to the nature and character of the debt, and the purchaser was not an innocent purchaser as against a joint maker of the mortgage, who was in fact a surety for the other maker, and who became subrogated to the creditor's rights upon payment of the debt.

4. **Subrogation; Sureties; New Statute.**—A new statute giving a surety the right of subrogation, existing when the surety, who was a joint maker of the mortgage, paid the mortgage and got an assignment from the mortgagee, applied unless it impaired some constitutional right by impairing the contract.

5. **Evidence; Opinion; Conclusion.**—A question to a witness asking an explanation as to why the president of plaintiff bank was taking such an interest in his debts, and was not taking any interest in him, was properly excluded, as it called for the mere reason, opinion, or conclusion of the witness.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. WERT, JR.

Ejectment by the Anniston Banking & Loan Company against Miller B. Green.   From a judgment for defendant, plaintiff appeals.   Affirmed.

Pending the trial the attorneys agreed as follows:

It is agreed that on January 7, 1908, M. B. Green and wife and Joe L. Green and wife executed to A. D. Edwards a mortgage in the sum of $4,088, due in two notes of equal amount, one maturing January 1, 1909, and one January 1, 1910; said mortgage conveyed the land sued for, which lands belonged to Joe L.

Green by virtue of a conveyance from his father. Said mortgage was recorded in the probate office of Calhoun county, Ala., February 7, 1908.. On August 19, 1914, A. D. Edwards executed to M. B. Green the instrument marked "Exhibit A." M. B. Green and Joe L. Green, at the date of the execution of the mortgage, above described, executed their two joint notes, above described, payable to A. D. Edwards." It is further agreed that on January 27, 1911, Joe Green and wife procured a loan from the Anniston Banking & Loan Company for about $12,500, and executed a note for the same, and secured same by a mortgage upon the lands involved in this suit, and other lands belonging to Joe Green, which mortgage has been foreclosed by said banking company on all the lands embraced in said mortgage under the power of sale contained in said mortgage, and that all of said land, including those sued for in this case, were bought in at said mortgage sale by H. B. Dent on August 20, 1913, after due advertising as provided by law, but said Dent purchased as a conduit of title, and on the same day transferred the lands back to the Anniston Banking & Loan Company; that said mortgage to the Anniston Banking & Loan Company was filed for record in the probate office of Calhoun county, Ala., on September 14, 1914, and duly recorded on that day, M. B. Green being in possession of the land at the beginning of the suit. It appeared that defendant was one of the parties who executed the mortgage to Edwards, he receiving $1,150, and Joe Green $2,500, he not receiving $1 of the $2,500, and that Joe Green did not own any of the lands included in the mortgage except the 90 acres now sued for. Joe Green only paid $200 on his debt, which was merely paying the interest, and M. B. Green paid all the balance, and received a transfer. The transfer was of the mortgage from M. B. Green and wife and J. L. Green and wife to A. D. Edwards, and was executed in proper form to M. B. Green and signed by Edwards in the presence of witnesses. It appears that after the execution of the mortgage to Edwards, Mr. Wellborn, president of the bank, received for the bank most of the money obtained as a payment of a debt due by M. B. Green, and also a debt due by Joe Green, and was told by M. B. Green all about the transaction, and how the money was obtained and how the mortgage was executed on the land, and that he put up his land and Joe put up his; that Joe could not borrow the money without his going security for him.

[Anniston Banking Co. v. Green.]

WILLETT & WILLETT, for appellant.  KNOX, ACKER, DIXON & STERNE, for appellee.

ANDERSON, C. J.— (1, 2) Regardless of the rules of law heretofore existing as to the effect that the satisfaction of a mortgage debt, by one who was legally bound to do so, had upon the rights of a subsequent mortgagee or other creditor of the mortgagor, the Code of 1907, §§ 5384 to 5394, inclusive, fixes and defines the rights and liabilities of joint makers of notes, bonds, bills, or contracts for the payment of money, and which includes mortgages.—*Thrasher v. Neely*, 196 Ala. 576, 72 South. 115.  Section 5384 defines the liability, and fixes the relationship.  Section 5385 gives the surety the right to a transfer, and subrogates him to all the rights of the creditor when he pays the debt, "in effect, he shall be a purchaser of the debt and all its incidents."  Section 5389 provides that suretyship can be proved by parol if the fact does not appear upon the face of the contract. It also appears that section 5394 provides a subrogation both in law and equity, upon payment of the debt by the surety, whether there was an assignment or not, and gives him the rights of the original creditor, and that as against other creditors, his claim ranks in dignity the same as that of the creditor whose claim is paid.  It would therefore seem from the foregoing that while Miller Green was a joint maker of the Edwards' mortgage, the undisputed evidence shows that he was but a surety for his brother Joe to the extent of approximately $2,500 of the mortgage debt, and upon the payment of same he was under the statute entitled to the transfer that was made to him, or would have been subrogated for the mortgage under section 5394, whether there had been a transfer or not.

(3) We do not think that the plaintiff is an innocent purchaser, as the mortgage, upon its face, was a joint one, and the registration of same was sufficient to put the plaintiff upon inquiry as to the nature and character of the debt.—*Truss v. Miller*, 116 Ala. 494, 22 South. 863.  Not only was this so, but Wellborn admitted actual notice of the mortgage, but claims that he was not informed that Miller Green was surety for his brother as to a part of the debt, and principal as to the other part.  He nevertheless knew that there was a joint mortgage, and as to Edwards, the mortgagee, they were both liable, and the law subrogated Miller Green to the rights of Edwards for whatever sum he may have paid for his brother Joe, and section 5384 made him

a surety to the extent of the share of the other maker, and section 5394 put Miller Green in the shoes of Edwards to the extent of so much of the debt due by Joe as was paid by Miller, and, prima facie, Joe was liable as principal to some extent, and not as a mere surety for Miller, and according to Wellborn's version he was jointly liable for the whole debt, and not as a surety for Miller Green; therefore, when Miller paid the debt, he became subrogated to the rights of Edwards to the extent of so much of the debt as should have been paid by Joe Green.

(4) It is true, the Edwards mortgage was made just before the adoption of the present Code but these new provisions of the statute existed when Miller Green paid the mortgage and got the assignment and the new statute applies unless to do so would impair some constitutional right by the impairment of a contract. —*Cowley v. Shields,* 180 Ala. 48, 60 South. 267. It is sufficient to say that the appellant did not take its mortgage until long after the adoption of the Code, and whether or not the new statute placed an additional burden upon or deprived Joe Green of any rights under the mortgage contract matters not, as he is not complaining.

(5) The trial court did not commit reversible error, in declining to let the appellant ask Joe Green, a witness, to explain why Wellborn was taking such interest in his debts and was not taking any interest in him. This called for the mere reason, conclusion, or opinion of the witness.

The judgment of the city court is affirmed.

Affirmed.

MCCLELLAN, SAYRE, and GARDNER, JJ., concur.