(97 South. 698)

**JEROME H. SHEIP, Inc., v. BAER et al.
(1 Div. 260.)**

(Supreme Court of Alabama. Oct. 18, 1923.)

**1. Corporations ⬅406(2)—Authority of president to contract not inferred.**

The fact that one is a president of a corporation does not permit any inference of fact that he is clothed with authority to make contracts in the name of his company.

**2. Corporations ⬅405—Position of general manager or managing agent implies authority to do corporate act within ordinary business of corporation.**

The position of general or managing agent of a corporation implies without further proof the authority of such officer to do anything that the corporation itself may do so long as the act done pertains to the ordinary business of the corporation.

**3. Corporations ⬅410—If president of cigar box lumber company contracted for lumber sued on, corporation was bound.**

If the contract for lumber was made by the president and the general manager of defendant cigar box lumber company, the corporation was bound.

**4. Sales ⬅181(11)—Evidence held to show readiness and ability to ship lumber to buyer.**

Evidence that there was in the yard of a lumber company sufficient lumber of the kind bought by defendant from plaintiff, to fill defendant's order, and that plaintiffs had contracted with such lumber company to take its entire lumber output, and that company was ready and waiting to ship the rest of defendant's order whenever defendant was willing to receive it, *held* sufficient to show plaintiffs' readiness and ability to ship the rest of the lumber to defendant. buyer.

**5. Sales ⬅176(1)—No occasion for meeting contractual requirement to inspect lumber where buyer refused to accept.**

Where defendant buyer refused to accept any more lumber under its contract with plaintiffs, the latter were under no obligation actually to load the lumber on cars, and hence there was no occasion for meeting the contractual requirement for inspection and certification of the lumber.

**6. Sales ⬅176(1)—Contractual requirement of inspection and certification of lumber was waived by buyer's refusal to accept.**

Contractual requirement of inspection and certification of lumber was a part of the actual performance, and not of a readiness and ability to perform, and was waived by defendant's refusal to accept performance.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Sales ⬳176(1)—Time of delivery ceased to be essence of contract, if ever it was, where buyer asked for delay.**

If contract for a sale of lumber specified when shipments should begin, or the sequence of daily carload shipments, those specifications were waived by defendant buyer's request for delay, and time ceased to be of the essence of the contract, if ever it was.

**8. Sales ⬳353(6)—Count held to allege refusal to accept lumber bought.**

A count alleging defendant agreed to buy and plaintiffs to sell 10 cars, 150,000 feet of a certain kind of lumber at a certain price per thousand feet and that although plaintiffs complied with all its provisions defendant failed to comply with the contract in that he refused to accept or pay for 134,742 feet of said 150,-000 covered by contract, cannot be construed as alleging plaintiffs had actually performed the contract by delivery of the lumber sold, but that defendant refused to accept 134,742 feet of the lumber.

**9. Sales ⬳151—Where buyer refused to accept lumber, seller was required only to be able, ready, and willing to deliver.**

Where a buyer refused to accept delivery of lumber under its contract with plaintiffs, the latter were only required to be able, ready, and willing to make delivery.

**10. Appeal and error ⬳1042(4)—If a count erroneously alleged delivery, refusal to strike it out held not prejudicial where actual delivery was not in issue and true issues were properly covered by charges given.**

If a count erroneously alleged plaintiff sellers had actually performed their contract of sale of lumber with defendant buyer by delivery of the lumber sold, refusal to charge out that count could not have been prejudicial to defendant where actual delivery was not in issue, as the jury were bound to understand, and the true issues were amply covered by other counts and by appropriate instructions.

**11. Corporations ⬳422(5)—Admissions made by agent clothed with general authority to do everything corporation is authorized to do binds corporation.**

Where an officer or agent is clothed with general authority to do everything the corporation is authorized to do, as is a general manager or superintendent, any declarations or admissions made by him relating to the subject-matter of the controversy would bind the corporation, though made subsequent to the negotiations.

**12. Witnesses ⬳398(2)—Predicate need not be laid for evidence offered in rebuttal.**

Where testimony is offered in rebuttal or else as a contradiction of a witness' version of certain conversations, a predicate need not be laid.

**13. Trial ⬳260(1)—Error not imputable to refusal to give correct charge where such charge was covered by charges given.**

Error could not be imputed to refusal to give a correct charge where it was fully covered by the charges given.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Action by Richard P. Baer and M. S. Baer against Jerome H. Sheip, Inc., to recover damages for alleged breach of contract for sale of certain lumber. Verdict and judgment for plaintiffs, and defendant appeals. Affirmed.

Errors assigned relate to rulings on the evidence and the refusal of the lower court to give affirmative charges requested by the defendant as to counts 3, 4, and 5, separately,

The substance of the allegations in special counts 3, 4, and 5 is as follows:

Count 3 alleges that plaintiffs agreed to sell, and defendant to buy, ten cars, 150,000 feet, 4/4 No. 1 common tupelo lumber, at $60 per thousand; that plaintiffs delivered one car, which defendant paid for, except $395.18; that defendant refused to accept or pay for remainder, "although the plaintiffs offered to deliver such lumber to the defendant and were ready, able, and willing to make such delivery."

Count 4 alleges that the defendant agreed to buy, and plaintiffs to sell, 10 cars, 150,000 feet, No. 1 common tupelo, at $60 per 1,000 feet. And plaintiffs say that, although they have complied with all its provisions on their part, the defendant has failed to comply with the following provisions thereof, viz.: The defendant has refused to accept or pay for 134,742 feet of said 150,000 feet of lumber covered by said contract.

Count 5 alleges that plaintiffs agreed to sell, and defendant to buy, 10 cars, 150,000 feet, of No. 1 common tupelo lumber, at $60 per thousand feet a national inspector's certificate being required, and such lumber to be shipped at rate of one car per day; that plaintiffs delivered one car, and defendant requested further deliveries to be held up for a short time, owing to the fact that defendant's sheds were full and plant blocked up; that plaintiffs held up further deliveries as requested, and thereafter, from time to time, made inquiries of defendant as to when deliveries should be made, and plaintiffs were time and again requested by defendant to further delay such deliveries until some time in February, 1921, when defendant, for the first time, took position that it had placed no order with plaintiffs, and refused to accept or pay for remaining 9 cars of lumber, "although plaintiffs offered to deliver such lumber to the defendant, and were ready, able, and willing to make such delivery."

Counts 1 and 2 were on account and account stated. The general issue was pleaded to each of the counts.

Smiths, Young, Leigh & Johnston, of Mobile, for appellant.

Defendant's president and general manager had no authority to make the contract

in question by virtue of their offices. W. A. Handley Mfg. Co. v. International, Rec. Co., 6 Ala. App. 219, 60 South. 557; Clark v. Minge, 187 Ala. 97, 65 South. 832; Sampson v. Fox, 109 Ala. 662, 19 South. 896, 55 Am. St. Rep. 950. Readiness and ability to perform must be alleged and proven, even though it is alleged that defendant refused to comply on its part. Moss v. King, 186 Ala. 475, 65 South. 180; Long v. Addix, 184 Ala. 236, 63 South. 982: Barney Coal Co. v. Davis, 1 Ala. App. 595, 55 South. 1023; Lawrenceburg R. M. Co. v. Jones & Co., 204 Ala. 59, 85 South. 719; Terrel v. Nelson, 177 Ala. 596, 58 South. 989. Plaintiffs failed to comply with the contract by shipping a car a day, and there was no evidence that they could comply with the stipulation for inspection. Hence they had no cause of action. Clauss Shear Co. v. Ala. Barber Sup. Co., 1 Ala. App. 664, 56 South. 49; Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; J. C. Lysle Co. v. Nor. Ala. Gro. Co., 201 Ala. 222, 77 South. 748; Robinson v. Bullock, 66 Ala. 548; Frankfurt-Barnett Co. v. Prym, 237 Fed. 21, 150 C. C. A. 223, L. R. A. 1918A, 602: Cleveland R. M. v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; Home Guano Co. v. International, Agri. Corp., 204 Ala. 274, 85 South. 713. A question calling for the declaration of a corporate officer as to a past transaction is objectionable. Meador v. Standard Oil Co., 196 Ala. 365, 72 South. 34; B. & A. Ry. v. Campbell, 203 Ala. 296, 82 South. 546.

Stevens, McCorvey, McLeod & Goode, of Mobile, for appellees.

Where a defendant's obligation is subject to a condition precedent, the complaint is sufficient if it alleges that plaintiff was ready, able, and willing to perform, but was excused from performance by unwillingness of the defendant to perform in his turn. Long v. Addix, 184 Ala. 236, 63 South. 982; 2 Williston on Contracts, 1586; 13 C. J. 662; Cort v. Ambergate, 17 Q. B. 126, 15 Jur. 877, 20 L. J. Q. B. 460, 79 E. C. L. 126. The averment of the plaintiffs' readiness and willingness to perform their part of the contract is proved by showing that they called on the defendant to accomplish its part. Notes to Cutter & Powell, 2 Smith, Lead. Cas. (9th Ed.) p. 18; Id. (11th Ed.) p. 15; 2 Williston on Contracts, 1586, 13 C. J. 662. If a vendor is to manufacture goods, and there is a repudiation of the contract while the goods are being manufactured, the vendor is not bound to complete the manufacture, and may measure his damages by the difference between the contract price and the cost of production, or of performance. Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 69 South. 964; 2 Williston, 1588; Root v. Johnson, 99 Ala. 90, 10 South. 293; Allegheny Valley Co. v. Raymond Co., 219 Fed. 477, 135 C. C. A. 189. If a corporation clothe a particular officer or agent with an apparent authority to act for it in a particular business or transaction, and persons deal with him in good faith, it will be bound to the same extent precisely as if such apparent authority were real. Ala. Fuel & Iron Co. v. Rice, 187 Ala. 458, 65 South. 402; St. Louis & S. F. R. R. Co. v. Hall, 186 Ala. 353, 65 South. 33; First National Bank of Birmingham v. First National Bank of Newport, 116 Ala. 520, 22 South. 976; Case v. Citizens' Bank of La., 10 Otto (100 U. S.) 446, 25 L. Ed. 695; 3 Fletcher, Cyc. Corporations, 3100; C. J. 14a, 94.

SOMERVILLE, J. According to plaintiff's testimony, the contract sued on was made by plaintiff's agent, Dill, with J. H. Sheip, the president, and E. F. Johnstone, the general manager, of the defendant corporation, which was engaged in the manufacture of cigar box lumber, for which purpose it bought and resawed one-inch boards.

Defendants' chief contentions are that the evidence failed to show (1) that either Sheip, the president, or Johnstone, the general manager, had authority from defendant to make the contract in question for it; (2) that plaintiff was ready, able, and willing to make delivery of the lumber in accordance with the terms of the alleged contract, whether as to quantity and sizes, or with the certificate of a national association inspector. For these reasons it is insisted that defendant was entitled to the general affirmative charge, as requested, on counts 3, 4, and 5. A further contention is that, as to count 4, defendant was entitled to the general charge for the reason that it alleges that plaintiffs complied with all the provisions of the contract on their part, whereas the evidence shows that they merely offered to perform.

[1, 2] The mere fact that one is president of a corporation does not raise any implication of law, nor permit any inference of fact, that he is clothed with authority to make contracts in the name of his company. Sampson v. Fox, 109 Ala. 662, 671, 19 South. 896, 55 Am. St. Rep. 950; Clark v. Minge, 187 Ala. 97, 65 South. 832; 14a Corpus Juris, 93, § 1858; Id. 356, § 2217. But "the general manager of a corporation has general charge, direction, and control of the affairs of the company for the carrying on of which it was incorporated" (14a Corpus Juris, 94, § 1859); and, "unless his authority is especially restricted, the authority and power of a general or managing officer or agent are coextensive with the powers of the corporation itself, and he has authority to do any act on its behalf which is usual and necessary in the ordinary course of the company's business (Baird Lbr. Co. v. Devlin, 124 Ala. 245, 27 South. 425; Rhodes Fur. Co. v. Weeden, 108 Ala. 252, 19 South. 318), or which he is

held out to the public as having authority to do, and may exercise all the powers which the board of directors could exercise or authorize under the same circumstances in the general management of the corporation business. * * * The fact that he occupies the position of general or managing agent implies, without further proof, his authority to do anything that the corporation itself may do, so long as the act done pertains to the ordinary business of the corporation." Id. 360, § 2221.

[3] If the contract sued on was in fact made by the president and the general manager of the defendant corporation, as Dill testified it was, the corporation was bound, and this objection cannot prevail.

[4] Dill's testimony, if believed, showed that there was sufficient timber of the kind contracted for on the yards of the Magazine Hardwood Sawmill Company to fill the contract with defendant, and that plaintiffs had contracted with that company to take its entire output of lumber. Other testimony showed that the hardwood company was ready and waiting to ship the rest of defendant's order whenever defendant was willing to receive it. This met all requirements, so far as plaintiffs' readiness and ability were concerned.

[5, 6] With respect to the contractual requirement that each car of lumber loaded and shipped to defendant should have a national inspector's certificate, it is sufficient to say that plaintiffs were under no obligation to actually load the lumber on cars in the face of defendant's refusal to accept any more lumber, and hence there was no occasion for inspection and certification. At any rate, inspection and certification was a part of actual performance, and not of readiness and ability to perform, and it was waived by defendant's refusal to accept performance.

[7] The contract did not specify when shipments should begin, nor the sequence of daily carload shipment. But, if it had, under plaintiffs' version of the evidence, those specifications would have been clearly waived by defendant's requests for delay, and time ceased to be of the essence of the contract, if it ever was.

[8-10] Count 4 of the complaint, taken as a whole, cannot be construed as alleging that plaintiffs had actually performed the contract by delivery of the lumber sold. It alleges that defendant refused to accept 134,742 feet of the lumber, in which case the only obligation on their part was to be able, ready, and willing to make the delivery. Moreover, it is to be observed, the matter of actual delivery was not an issue in the case, as the jury were bound to understand, and, the true issues being fully and aptly covered by other counts, and by appropriate instructions to the jury, the refusal to charge out count

4 could not have been prejudicial to defendant.

[11] The general rule is, of course familiar, that the declarations of an officer or agent of a corporation are not competent evidence against the principal unless made within the scope of his authority and while in the discharge of his duties in and about the particular transaction of which they constitute a part of the res gestæ. Meador & Son v. Standard Oil Co., 196 Ala. 365, 72 South. 34, and cases cited. But, where the officer or agent is clothed with full and general authority to do everything that the corporation is authorized to do, as is a general manager or general superintendent, so that he is in fact the alter ego of the corporation, a different rule prevails, and "any declarations or admissions made by him relating to the subject-matter of the controversy, would be binding on the defendant, although subsequent to the negotiations." Home Ice Factory v. Howells Mining Co., 157 Ala. 603, 606, 48 South. 117, 118. This principle is applicable to the conversations between the witness Overcast and defendant's general manager, Johnstone, as testified to by Overcast.

[12] As to the conversations between the witness Thayer and defendant's president, J. H. Sheip, they were very clearly competent as being in rebuttal of Sheip's testimony, or else as contradictions of Sheip's version of those conversations. In such cases a predicate need not be laid; but, taking Sheip's testimony on cross-examination as a whole, we think a sufficient predicate was laid for his contradiction.

[13] Charge 10, refused to defendant, was fully covered by given charge 11, and error cannot be imputed to its refusal even if it were a correct charge under the evidence.

We have examined the record with due care, and find no error of which defendant can justly complain, and, as the evidence supports the verdict, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.