214 So.2d 833

**ALABAMA POWER COMPANY**

v.

**Aubrey Gene SELLERS.**

**3 Div. 180.**

Supreme Court of Alabama.

Oct. 3, 1968.

Thos. S. Lawson, Jr., Warren H. Goodwyn, Martin, Balch, Bingham, Hawthorne & Williams and Steiner, Crum & Baker, Montgomery, for appellant.

. Richard M. Jordan and Whitesell, Alton & DeMent, Montgomery, for appellee.

COLEMAN, Justice.

Defendant appeals from a judgment for plaintiff in action to recover for damage to plaintiff's truck allegedly caused by defendant's employee in operating defendant's truck at the time it collided with plaintiff's truck on Bell Road.

Plaintiff's complaint contained two counts, the first charging that defendant's employee negligently caused the collision, and the second charging that the employee wantonly caused it. At the close of the evidence, the trial court gave the affirmative charge for defendant as to the wanton count and we are not further concerned with that count.

Defendant pleaded the general issue in short by consent, etc. Defendant filed also a plea of recoupment alleging that plaintiff's employee, who was operating plaintiff's truck, was guilty of negligence which caused the collision, and defendant seeks to recover from plaintiff for the damage to defendant's truck in the same collision.

The court gave plaintiff's requested affirmative charge, with hypothesis, instructing the jury that they could not find against the plaintiff on defendant's plea of recoupment. Giving this charge is assigned for error.

The evidence shows that on an October morning, plaintiff's dump truck, loaded with gravel, was following defendant's truck and "chipper" as both traveled southward. The collision occurred at the point where a private driveway comes into Bell Road on the east side, that is, on the left of the direction in which the trucks were traveling. Defendant's driver attempted to turn left into the driveway and plaintiff's driver attempted to pass defendant's truck, all at the same time. Plaintiff's driver described the collision as follows:

"Q Would you tell us what happened beginning at the time you turned off the Atlanta Highway and you turned on to Bell Road?

"A Yes, sir. I turned off the Atlanta Highway going on Bell Road and I saw the Alabama Power Company truck right at the curve going up the hill, and he was going slow on the right hand side of the road, and I followed him to the top of the hill in order to see my way clear of passing, and when I came to the top of the hill or the crest of the hill the road was clear and I started passing him. Just about the time I got beside him or part of the way, he started moving toward his left side of the road, and so I put on my brakes as he started, and I got all the way to the left side of the road on the shoulder just about, and he made a complete left turn and I had to take the ditch to prevent colliding with the truck.

"Q Did you hit the truck or did the truck hit you?

"A Well, he hit me right at the driveway on his left front fender."

Plaintiff's driver testified that he blew his horn when he pulled out and saw the way was clear to pass defendant's truck.

Plaintiff's driver also testified that the driver of defendant's truck did not give any signal of intention to turn left, either by flashing light or extended arm. Plaintiff's driver testified that the speed of both vehicles was twenty to thirty miles an hour, and that he "was trying to pass him (defendant's truck) because he was slow on the road and I had to climb two hills ahead of him." (Par. Added) He testified that the road "is not built for a loaded truck, and it is rather rough," and "has a lot of dips in it" which are "hard on a loaded truck."

The State Trooper, who investigated the collision, testified that, when he arrived on the scene, the vehicles had not been moved; that the accident occurred at 9:10; and that he arrived at 10:15. The trooper testified that defendant's driver made the following statement: that he was looking for the work site and did not know exactly where it was; that, after going over the small hillcrest, he saw a crew working to the left of Bell Road, and he started turning into the driveway; that the truck windows were up and he "wasn't paying any attention to anything other than looking for where he was supposed to report for work." Admission of this testimony of the State Trooper is the action complained of in the second assignment of error.

The State Trooper testified that the turn signal lights on defendant's truck were working after the accident but the brake light did not work.

Defendant's driver testified:

"A I was told to go to the Bell Road approximately one-half to three-quarters of a mile off the Atlanta Highway to meet Mr. Gaddis and his crew, and I entered the Bell Road and there was supposed to be a construction site there, and I entered the Bell Road and went a short distance, maybe a quarter of a mile or more, and I came to this first house that this last witness just spoke of, and I didn't give a right turn signal there, and I had both flashers on, and these trucks are fixed so that they will

either flash right or left or both flashes are working at one time, and so I wasn't going to make a right turn and I merely pulled off of the shoulder of the road and I had both flashes on at the same time, and I got out and checked there, and it was the wrong site, and so I continued back on down the road to the house there. This was a curved road, and a lot of hills, and I topped this little hill, and looked off to my left, and saw Mr. R. E. Gaddis and his line truck there. It is one of the new green and yellow trucks, and you can see it. You don't waste any time seeing it. You can see it, and it is easy to recognize, and I proceeded down the hill and about a hundred and fifty feet I would say between the drive—about a hundred and fifty feet before the drive I made a left turn signal, and proceeded on down to the drive, and made a left turn, and I was hit just about the time my front wheels crossed the culvert. He hit me.

"Q Mr. Jones, do you recall whether your window was down at the time of the accident on the driver's side?

"A I wasn't sure at the time. The Highway Patrolman asked me had I heard the horn blow and I told him, no, but my window might have been up, but after that I walked back to my truck and there was just gravel all inside of the truck, and it had to come through that left window, as that's the only place it could have come, and the left window was not broken out, and so the window was down at the time of the accident.

"Q Do you recall seeing your signal lights on immediately after the accident?

"A Yes, sir. Immediately after the accident, I jumped out and my front signal lights—I could see it as I jumped out of the truck, and it was blinking, and I went around and asked the fellow in the other truck if he was hurt, and he said, no, and a whole lot of other things, and I helped him out of the truck and we went immediately to the back of my truck and my rear signal light was working.

"Q Now, Mr. Jones, about how long after the accident did the highway patrolman get there?

"A It was almost an hour.

"Q It was almost an hour?

"A Something like that."

The witness Bavar testified that he was an employee of defendant, was a passenger in defendant's truck, and that, immediately after the accident, the left blinker of defendant's truck was blinking. With respect to the blowing of plaintiff's horn and the window on defendant's truck, he testified:

"Q. Mr. Bavar, do you recall any time before the accident itself the sound of a horn being blown?

"A No, sir.

"Q Do you recall whether the window was down on the driver's side of the car?

"A It was down, yes.

"Q Was it down?

"A Yes, sir.

"Q What makes you recall that the window was down, Mr. Bavar?

"A Well, I made a statement earlier that it was up, but after looking at the truck I noticed the window and that it wasn't broken, and gravel came through the truck, and as the truck hit, I looked around and I saw gravel coming through the truck, and it came into the truck and the window wasn't broken, so it must have had to be down."

Plaintiff contends that the court was correct in giving the affirmative charge for the plaintiff on defendant's plea of recoupment because the evidence shows without dispute that defendant's driver violated § 17(b) of Title 36, Code 1940 as Recompiled 1958, which recites:

"(b) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 16 of this chapter, or turn a vehicle to enter a private road or

driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement."

Plaintiff further contends that defendant's driver violated § 17(c), of the same title, which recites:

"(c) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

Defendant appears to concede that it would not be entitled to recover on its plea of recoupment if defendant's driver was guilty of negligence which proximately contributed to cause the damage to defendant's truck. Defendant says, however, that even if its driver was guilty of negligence, that negligence would not bar recovery on the plea of recoupment unless the negligence of defendant's driver was a proximate, contributing cause of the damage; and, that, under the scintilla rule, it was for the jury to decide whether the negligence of defendant's driver did proximately contribute to cause the damage, and whether the negligence of plaintiff's driver in failing to blow his horn or in attempting to pass, or both, was the proximate cause of the collision.

Plaintiff's driver testified he blew his horn, that it was a "good" horn and was "loud." Defendant's driver and Bavar, the passenger, testified that the window was down and they did not hear plaintiff's horn. There is more than a scintilla of evidence to support a finding that plaintiff's driver did not blow his horn.

§ 12(b) of Title 36, supra, recites:

"(b) The driver of an overtaking motor vehicle not within a business district as herein defined shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction. Any person violating any of the provisions of this section, shall be guilty of a misdemeanor."

This court has said:

"In order to bar recovery on the ground that plaintiff violated the statute, it is essential that such violation should have contributed to the injury as a proximate cause. (Citations Omitted)" Alabama Power Co. v. Buck, 250 Ala. 618, 621, 35 So.2d 355, 358.

". . . . It is not correct, as contended by appellant, to say that the entire question of contributory negligence should be submitted to the jury. If under the undisputed proof in the case there is a violation of § 17, Title 36, Code of 1940, then such violation constitutes negligence on the part of the plaintiff as a matter of law but it would still remain a question for the jury as to whether violation of the statute proximately contributed to her injury. (Citations Omitted)" Triplett v. Daniel, 255 Ala. 566, 568, 52 So.2d 184, 186.

". . . . A violation of the statute by plaintiff or defendant is negligence, but is not the basis of a cause of action or defense unless it was a proximate cause of the accident. Alabama Power Co. v. Buck, supra. The negligence of plaintiff which was a proximate contributing cause of the collision is a good defense, although defendant was also guilty of primary negligence which was a proximate contributing cause too. When both parties are guilty of simple negligence and each is a proximate contributing cause without more, neither can recover damages from the other. But if one is guilty of negligence after discovery of the danger of the other in respect to causing the accident, and when such subsequent negligence is a proximate contributing cause, he is liable for the damage. In all such cases the question of proximate cause and subsequent negligence are for the decision of the

jury.' . . . . ." Winfrey v. Witherspoon's, Inc., 260 Ala. 371, 373, 71 So. 2d 37, 38.

We hold in the case at bar, that the question of proximate cause was for the jury and that the court erred in giving the affirmative charge for plaintiff on defendant's plea of recoupment.

Defendant's second assignment is that the court erred in admitting into evidence the testimony of the State Trooper showing statements that defendant's driver had made to the trooper.

Plaintiff says proper objection was not made and defendant is not entitled to review of this question. Since the judgment is reversed on the first assignment, we pretermit deciding whether objection was properly made. In view of another trial, however, we consider the admissibility of the testimony as to the statements made by defendant's driver to the State Trooper.

As we understand the record, defendant's driver made the statements in answer to questions asked by the investigating officer.

It was stipulated that both truck drivers "were acting within the line and scope of their employment at the time of the accident in question." This is not a stipulation that defendant's driver was acting for his employer an hour after the accident.

The statements by defendant's truck driver were made approximately one hour after the collision occurred and were "merely admissions by an agent as to a past transaction—a declaration by the driver of the truck subsequent to the injury, and the defendant could not and should not be bound by it." Teague v. Alabama Coca-Cola Bottling Co., 209 Ala. 205, 206, 95 So. 883, 884; Johns Undertaking Co. v. Hess-Strickland Transfer & Storage Co., 213 Ala. 78, 79, 104 So. 250.

In holding that the trial court erred in admitting, against a defendant railroad, evidence showing statements made by a conductor and an engineer " 'a few minutes after the plaintiff had been hurt, . . . .'," this court said:

"It is difficult, if not impossible, to accurately define the principle of res gestae, as it is often called. It is commonly said to have reference to such circumstances and declarations as are contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character. 1 Greenl. Ev. § 108. What lapse of time is embraced in the word 'contemporaneous,' is often a question of difficulty. Perfect coincidence of time between the declaration and the main fact is not, of course, required. It is enough that the two are substantially contemporaneous; they need not be literally so. The declarations must, however, be so proximate in point of time as to grow out of, elucidate, and explain the character and quality of the main fact, and must be so closely connected with it as to virtually constitute but one entire transaction, and to receive support and credit from the principal act sought to be thus elucidated and explained. The evidence offered must not have the earmarks of a device, or afterthought, nor be merely narrative of a transaction which is really and substantially past. (Citations Omitted)

\*      \*      \*      \*      \*      \*

" \* \* \* Our conclusion is, that the declarations of the conductor and engineer can not, under a proper application of this principles, be regarded as a part of the res gestae of the accident resulting in the injury to plaintiff. The time—'a few minutes'—does not appear to be so proximate to the main transaction, nor are the declarations made otherwise so closely connected with it, as an elucidating circumstance, as to justly authorize the conclusion that they are not merely narrative of a past occurrence, which at the moment was finished and complete. (Citations Omitted)" Alabama Great Southern Railroad Co. v. Hawk, 72 Ala. 112, 117, 118.

We are of opinion that, in the case at bar, the statements made by defendant's driver to the State Trooper, were not part of the res gestae and were not admissible as original or independent evidence against defendant. No predicate had been laid so as to make the statements admissible to impeach defendant's driver, nor was the testimony limited to that purpose. See Engel v. Davis, 256 Ala. 661, 57 So. 2d 76; Wade v. Brisker, 223 Ala. 585, 173 So. 64.

Defendant's third assignment is that the court erred in overruling defendant's objection to a question to the witness J. C. Underwood. Defendant did not object until after the question had been answered and the objection came too late. Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 612, 64 So. 2d 594.

For giving affirmative charge for plaintiff on defendant's plea of recoupment, the judgment is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and KOHN, JJ., concur.