This is an appeal from a judgment for the City of Huntsville and Matthew Fritts, Inc. in a wrongful death action. We reverse.
In April, 1976, the City of Huntsville (City) let a contract to Matthew Fritts, Inc. (Contractor) for installation of sewer lines in the Lincoln Village North area including the alley behind Levert St. and Front St. The sewer line was to be placed some six to eight feet below the surface of ground and below an existing natural gas line in the alley which had not been laid in a straight line but in places crossed over and above the bottom of the trench in which the sewer line was to be installed. During the installation of the sewer line behind 2037, 2039 Levert St., the gas main and service line were broken several times and promptly repaired by the City's Utilities Dept., as was their duty. On completion of the sewer line the Contractor was to properly backfill the trench in which the sewer line lay, pursuant to specifications in the contract.
On September 29, 1976, an explosion and fire occurred at the residence owned by Mrs. Gussie Womack, located at 2037 and 2039 Levert St., Huntsville, Ala., resulting in the death of John Harold Womack. Womack, who was burned in the fire, was an occupant of the residence at the time of the explosion and fire. Womack apparently had been outside looking for a gas leak just prior to the explosion and fire.
Following the explosion and fire, an examination revealed a transverse, circumferential break in the gas main in the alley behind Mrs. Womack's house. The gas main in which the break occurred was located above the bottom of the sewer trench and extended over and into the sewer trench.
Scarlet Riley, the only child of Harold Womack, as administratrix of his estate, sued the City and Contractor alleging negligence and wantonness resulting in the wrongful death of Harold Womack. She contended that the Contractor had negligently or wantonly backfilled the sewer trench under the gas line, resulting in a break in the gas line and a gas leak which led to the fire. She contended that the City *Page 559 
negligently and wantonly failed to follow recommendations that the gas main be replaced before the sewer line was installed, to inspect the backfilling, to maintain the gas lines and that the City was liable under res ipsa loquitur. The City and Contractor denied any negligence and wantonness and asserted that Womack was contributorily negligent by using a cigarette lighter to detect the gas leak under the house.
The trial resulted in a jury verdict for the City and Contractor. From the verdict and judgment thereon, including the denial of a motion for new trial, Mrs. Riley appeals.
She contends the trial court erred in the following respects:
1. Refusal of the trial court to allow her to introduce evidence on the decision of the City not to follow the recommendation of its consulting engineer to relocate the gas lines in the alley before installing the sewer line.
2. Restriction to proof of breaks in the gas main and service lines in the area behind 2037-2039 Levert St.
3. Refusal to allow D.J. Farley, a qualified expert, to state whether or not it would be good safety practice to dig a sewer main at this location without relocating the gas lines.
4. Limitation of the cross-examination of city employee, Frank Miller, to his testimony on direct examination regarding the number of breaks caused by the Contractor in the alley behind 2037-2039 Levert St.
5. Refusal to allow as evidence the factors taken into consideration by the engineering consultation firm hired by the City when the general notes prepared by that firm had previously been admitted into evidence. Mrs. Riley claims this evidence was admissible since her claim was based in part on Contractor's failure to properly locate the gas lines prior to construction and the Contractor's and City's failure to coordinate responsibilities.
6. Refusal to allow the City's expert witnesses to testify that lack of proper backfill under a gas main will cause the type of break that was found in the gas main in the alley behind Mrs. Womack's house.
7. Refusal to allow her to prove the cause of death of Womack when defendants had offered to stipulate the cause of death but she refused to do so.
8. Refusal to allow into evidence pictures of the body of Womack taken at the autopsy showing the burn pattern to be on Womack's back when Womack's potential contributory negligence was at issue.
9. Refusal to allow her attorney to cross-examine E.H. Hamilton, head of City gas department, on general notes on the plans already in evidence.
10. Refusal to allow her attorney to cross-examine Curtis Willis, City engineering department inspector assigned to this project, about job specifications.
11. Refusal to allow her attorney to cross-examine Larry Waldrop, administrator of gas pipeline safety for Alabama, on his opinion on whether the backfilling in this case complied with the regulations and provided proper support.
12. Trial judge's admonishments of her attorney were prejudicial error.
We will discuss the errors numbered 10 and 11, pretermitting discussion of the other errors asserted by Mrs. Riley, because they are not likely to occur on the retrial of this case.
At the beginning of the trial, job specifications for the Lincoln Village North project were introduced as plaintiff's exhibit No. 33 and admitted into evidence. Those specifications provided for backfilling the sewer lines pursuant to the standards set out therein, and that the City's Engineering Department, which was under the Department of Public Works, was required to approve the backfilling done by the Contractor. Later during the course of the trial, the defendants called Curtis Willis, an inspector for the City of Huntsville Engineering Department, who was assigned to oversee the Lincoln Village North project. On cross-examination Mrs. Riley's counsel elicited that Willis was the project inspector *Page 560 
not only for this job site, but for three others also, that he was familiar with the plans and specifications for the work being done by the Contractor, and that he had approved the backfill for the sewer project. Counsel then questioned him about how the backfilling was done and whether or not the wheels of the landscaper were used to compact the backfill within the trench. In an attempt to show negligence on the part of the City by its approval of allegedly improper backfill which would have led to the break in the gas line causing the explosion, Mrs. Riley's attorney attempted to ask Curtis Willis about the specifications, which were already in evidence and which he had previously testified he was familiar with:
 "Q. Do the specifications permit the running of a piece of heavy equipment to compact the backfill in the alley where the main was?
 "MR. CAMP: Your Honor, we object; doesn't say it does or does not.
"THE COURT: I sustain it.
"Q. How is backfill in the alley to be performed?
"MR. EYSTER: We object to that, Judge.
"Q. According to the specifications. Go ahead.
"A. Like I —
"MR. EYSTER: We object to that.
"THE COURT: I sustain it.
Rule 43 (b) of the Alabama Rules of Civil Procedure provides that "any witness called by a party and examined as to any matter material to any issue may be cross-examined by the adverse party upon all matters material to every issue of the action." Every party has the right to a "thorough and sifting" cross-examination of the opponent's witnesses. Code 1975, §12-21-137. Control of cross-examination is within the trial judge's discretion only after the party has had an opportunity to substantially exercise his right of cross-examination.Atwell v. State, 354 So.2d 30 (Ala.Cr.App. 1977), cert. denied354 So.2d 39 (Ala. 1978). The wide latitude and extent of cross-examination may be subjected to the trial judge's limited discretion to stop questioning that is repetitious, irrelevant, harassing, annoying, or humiliating, or concerns wholly collateral matters. International Brotherhood of Teamsters,etc. v. Hatas, 287 Ala. 344, 252 So.2d 7 (1971); Ball v. State,337 So.2d 31 (Ala.Cr.App. 1976), cert. quashed 337 So.2d 39
(Ala. 1976). Clearly counsel's questions were not harassing, annoying, or humiliating. Likewise, they were not irrelevant or concerned with collateral matters. Questions relating to the substance of the specifications on backfill from the City employee who inspected and determined the Contractor's compliance with those specifications, giving the City's approval to the work, were not irrelevant or collateral. Although the specifications had been previously admitted into evidence, determining how those specifications were read and interpreted by the inspector who approved the sewer project backfill pursuant thereto was not impermissibly repetitious. Cross-examination should not be so limited as to lose its benefit to the questioner. Louisville Nashville Railroad Co.v. Martin, 240 Ala. 124, 198 So. 141 (1940).
Defendants also called Larry Waldrop, an employee of the State of Alabama, who was Administrator of Gas and Pipeline Safety. Mr. Waldrop had helped organize the gas pipeline safety division of the Public Service Commission, had completed two years of engineering school at Auburn University, had considerable on-the-job engineering training as an assistant engineer, and had investigated natural gas line leaks and explosions since 1969. He had attended numerous seminars in connection with his work, including a two week course at Drexel University in Philadelphia, Pennsylvania, dealing specifically with compliance with gas regulations and maintenance of gas systems. Waldrop testified on direct examination that Alabama had adopted the Department of Transportation regulations for transportation of natural gas and other gas by pipeline. As elicited by Mr. Eyster, the Contractor's attorney, he gave his opinion on the ignition point of the fire. He also offered his opinion on direct examination that the explosion was a flash fire, that it *Page 561 
would not take a great deal of natural gas to cause ignition, and that the ignition source was under the house.
On cross-examination of this witness, Mrs. Riley's attorney determined that Mr. Waldrop had spent several hours inspecting the site of the explosion and the trench where the gas main had been repaired, the backfill, and stated that the backfill was not properly compacted. Mrs. Riley's attorney later attempted to ask him if the backfill complied with the Department of Transportation regulations:
"MR. RALPH FORD: I do have one more question.
 "Q. I believe you said that the Department of Transportation Regulations for the transportation of natural gas and other gas by pipeline had been adopted by Alabama?
"A. Adopted by Alabama, yes, sir.
"Q. And you are familiar with them?
"A. Yes sir.
 "Q. And I will ask you if they provide in part that each ditch for a transmission line or main must be backfilled in a manner that provided firm support under the pipe?
"A. Yes, sir, it does.
 "Q. In your judgment did the backfilling in this ditch provide firm support under the gas main line?
"MR. EYSTER: We object to that.
"THE COURT: I sustain it.
"MR. RALPH FORD: We except.
"Q. In Your opinion did it comply with —
"MR. EYSTER: We object to that.
"THE COURT: Sustained.
"Q. This regulation?
"MR. EYSTER: We object to that.
"THE COURT: Sustained.
"MR. RALPH FORD: That is all."
Whether or not a particular witness will be allowed to testify as an expert is within the discretion of the trial court, but once the witness is allowed to testify as an expert, proper questions should not be excluded. See Maslankowski v.Beam, 288 Ala. 254, 259 So.2d 804 (1972); Kozlowski v. State,248 Ala. 304, 27 So.2d 218 (1946). The trial judge allowed Mr. Waldrop to testify as an expert, but disallowed the above questions on cross-examination that were proper. The line of questioning was pertinent on the Contractor's alleged negligence in backfilling as could have been evidenced by its failure to exercise sufficient care in backfilling to comply with the recognized and applicable Department of Transportation standards.
Mrs. Riley's right to cross-examine these witnesses in an attempt to establish negligence on the part of City and Contractor having been improperly limited, we reverse and remand.
REVERSED AND REMANDED.
TORBERT, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.