[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 604 
On August 16, 1984, Appellant, Mary Perry, sued Brookwood OB-GYN Clinic, P.A., Dr. William H. Brakefield, Dr. Gilder Wideman, Dr. Janet Davis, Dr. Timothy Davis, Brookwood Medical Center Hospital, and AMI, Inc., in the Circuit Court of Jefferson County, for medical malpractice resulting in the stillbirth of her son Robert. Defendants Dr. Janet Davis, Dr. Timothy Davis, AMI, Inc., and Brookwood Medical Center Hospital were dismissed prior to the trial of this action. Robert Perry died in utero in the early morning hours of August 20, 1982, at 31 weeks gestation. The jury found in favor of Dr. Wideman but returned a verdict in favor of Ms. Perry and against Dr. Brakefield and Brookwood OB-GYN Clinic, P.A., in the amount of $487,500.00, less a credit for $475,000.00, the amount paid by the other defendants who had been released and dismissed. Judgment was entered on these verdicts.
Ms. Perry appeals, complaining of an inadequate damages award against Dr. Brakefield and Brookwood OB-GYN Clinic, P.A., and from the judgment in favor of Dr. Wideman. She cites the following evidentiary rulings as error:
 I. The trial court's refusal to permit Ms. Perry to question Nurse Alice Rouse, one of the registered nurses attending Ms. Perry when the baby died, concerning statements made to Nurse Rouse by Dr. Wideman approximately a week after the baby's death;
 II. The exclusion of the deposition testimony of Nurse Debbie Gudauskas, who also had been attending Ms. Perry when the baby died, concerning statements made to Nurse Gudauskas by Dr. Brakefield shortly after the death;
 III. The trial court's refusal to allow Ms. Perry too confront Dr. Wideman's expert, Dr. Buris Boshell, on recross-examination, with facts in evidence that tended to undermine Dr. Boshell's opinions; and
 IV. The trial court's refusal to allow Ms. Perry to question Dr. Boshell on cross-examination about a letter from Dr. Wideman's counsel to Ms. Perry's counsel outlining Dr. Boshell's expected testimony.
Ms. Perry contends that rulings I and II improperly prevented her from presenting evidence relevant and material to the issue of damages against Dr. Brakefield and Brookwood OB-GYN Clinic, P.A. She argues that rulings III and IV improperly denied her the right to a thorough and sifting cross-examination of Dr. Boshell and substantially prejudiced her case against Dr. Wideman. We find that rulings I and IV were proper, that Ms. Perry did not preserve an objection to ruling II at trial and thus, cannot complain about it on appeal, and that ruling III was erroneous. *Page 605 
Therefore, we affirm the judgment against Dr. Brakefield and Brookwood OB-GYN Clinic, P.A., reverse the judgment in favor of Dr. Wideman, and remand this case for proceedings consistent with this opinion.
I. We first address Ms. Perry's contention that the trial court erred in refusing to allow her to question Nurse Alice Rouse concerning certain statements made to Nurse Rouse by Dr. Wideman. Nurse Rouse testified in deposition that about a week after Robert Perry's death, Dr. Wideman told her that he had spoken with Dr. Brakefield and that Dr. Brakefield had stated to Dr. Wideman that "all [Dr. Brakefield] could see" was the tremendous financial burden the baby, if born alive, would have been to Ms. Perry. Nurse Rouse further stated in her deposition that Dr. Wideman stated to her that Dr. Brakefield had been "playing God" in considering such factors in treating Ms. Perry. The trial court refused to permit Ms. Perry's counsel to question Nurse Rouse about this conversation.
Ms. Perry's primary argument on appeal is that the statements were admissible over a hearsay objection as admissions by Brookwood OB-GYN Clinic, P.A. Such statements, if admissible, would go to prove the element of breach of the duty of care owed by Dr. Brakefield, and thus, breach of duty by the Clinic. In essence, Ms. Perry argues that Drs. Wideman and Brakefield, by virtue of their membership in the professional association, were empowered to speak for it. Therefore, according to Ms. Perry, Dr. Brakefield's statements relayed to Nurse Rouse through Dr. Wideman, and Dr. Wideman's own statements to Nurse Rouse, all of which were inconsistent with the position taken by the Clinic at trial, were admissions.
As a professional association, Brookwood OB-GYN Clinic, P.A., must be treated as a corporation for purposes of this appeal. Ala. Code (1975), § 10-10-2. An agent of a corporation is not empowered to bind the corporation with his admissions unless they (1) occur while he is acting in the line and scope of his authority and (2) are part of the res gestae of the incident that is the subject of the litigation.Alabama Power Co. v. Sellers, 283 Ala. 137,214 So.2d 833 (1968); Meador Son v. Standard Oil Co.,196 Ala. 365, 72 So. 34 (1916). On the other hand, "where the officer or agent is clothed with full and general authority to do everything that the corporation is authorized to do, as is a general manager or general superintendent, so that he is in fact the alter ego of the corporation, a different rule prevails, and 'any declarations or admissions made by him relating to the subject matter of the controversy would be binding on the [corporation], although subsequent to the transaction at issue.' " Sheip, Inc. v. Baer,210 Ala. 231, 234, 97 So. 698, 700-01 (1923); see alsoFarmers Union Warehouse Co. v. Barnett, 223 Ala. 435,137 So. 176 (1931); Home Ice Factory v. Howell's MiningCo., 157 Ala. 603, 48 So. 117 (1908).
Ms. Perry concedes that none of the statements were part of the res gestae. The question thus becomes whether Ms. Perry sufficiently established at trial that Drs. Wideman and Brakefield were the general managers or alter egos of the association so that the trial court erred in excluding their alleged admissions. We find that Ms. Perry did not do so.
As we recognized in Sheip, Inc. v. Baer, 210 Ala. 231,234, 97 So. 698, 700-01 (1923), if Drs. Wideman or Brakefield had been shown to be "clothed with full and general authority to do everything that the corporation is authorized to do"; i.e., if they were the association's alter ego, then any admissions made by them would be binding on the association. Further, if any of the recognized factors suggesting alter ego had been shown, such as commingling of funds, failure to follow corporate formalities, or under-capitalization, the result might be different. SeeForester v. Jerue, Inc. v. Daniels, 409 So.2d 830 (Ala. 1982). However, the record is devoid of any evidence that Dr. Wideman or Dr. Brakefield possessed such full and general authority as would make them the association's alter ego. As well, there is no evidence in the record of other factors that would suggest that either of them is the alter ego of the *Page 606 
professional association. Therefore, we cannot say the trial court erred in finding them to be agents and excluding their statements on that ground.
None of Dr. Wideman's statements, either those regarding what Dr. Brakefield told him or those concerning what he thought of Dr. Brakefield's actions, were otherwise admissible against either the professional association or Dr. Brakefield. A codefendant's statements, outside the presence of the defendant or defendants against whom they are offered, are not admissible to prove the truth of the matter asserted therein. Ferlesie v. Cook, 201 Ala. 571, 78 So. 915
(1918). Dr. Brakefield's statement, even if otherwise an admission by him, was ultimately inadmissible as relayed to Nurse Rouse via Dr. Wideman, because it was hearsay.
Ms. Perry finally contends that Dr. Wideman's conversation with Nurse Rouse was admissible to impeach Dr. Wideman's testimony. To impeach a witness with a prior inconsistent statement, counsel must ask him specifically about the statement at issue, with reference to the time and place at which he allegedly made it and the person to whom it was made, and give him an opportunity to admit or to deny having made it. Liberty National Life Insurance Co. v.Harrison, 274 Ala. 43, 145 So.2d 219 (1962). It does not appear from the record that Ms. Perry laid this required predicate, and, therefore, the conversation was not admissible to impeach Dr. Wideman.
II. We now address Ms. Perry's second point of error. The trial court conditionally granted Appellees' pretrial motionin limine, excluding both the testimony of Nurse Rouse discussed above and certain deposition testimony of Nurse Gudauskas. Nurse Gudauskas's excluded testimony was that shortly after the baby's death, Dr. Brakefield told her "something to the form that this was a black single mother and this would just have been another baby that we [society] were going to have to pay for." Once at trial, Ms. Perry failed to even offer this testimony into evidence; yet, Ms. Perry now contends that its exclusion was a reversible error that she properly preserved for appeal. In Robinson v.Kierce, 513 So.2d 1005, 1009 (Ala. 1987), we held as follows:
 " 'We hold, therefore, that an appellant who suffers an adverse ruling on a motion to exclude evidence (or other matters, e.g., argument of counsel), made in limine, preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence or other matters and assigns specific grounds [therefor] at the time of trial, unless he has obtained express acquiescence of the trial judge that such subsequent objection to evidence proffered at trial and assignment of grounds [therefor] are not necessary. See C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1 (1981).' " (Quoting Liberty National Life Insurance Co. v. Beasley, 466 So.2d 935
(Ala. 1985).)
This Court further held in Killingsworth v.Killingsworth, 283 Ala. 345, 354, 217 So.2d 57, 65-66
(1968), as follows:
 " '[A]n offer of proof is not necessary, in order to preserve an objection to a ruling of exclusion for review, where the offer of proof would be a useless gesture by virtue of the attitude of the trial court, or where the court has ruled broadly that evidence of a particular class or type, or evidence in support of the theory or fact which the party is seeking to establish, is inadmissible.' " (Quoting 4 C.J.S. Appeal and Error, § 291.)
The clear holding of these cases is that unless the trial court's ruling on the motion in limine is absolute or unconditional, the ruling does not preserve the issue for appeal. Ms. Perry contends that Nurse Gudauskas's testimony was of the same class or type as Nurse Rouse's testimony and supported the same theory, i.e., that Dr. Brakefield made his decisions about Ms. Perry's treatment based on non-medical reasoning. Therefore, Ms. Perry argues, when the judge excluded Nurse Rouse's testimony at trial, Nurse Gudauskas's testimony was also effectively excluded, and an *Page 607 
offer of proof would have been futile. The record, however, simply does not support Ms. Perry's contentions. We have carefully reviewed the record and are satisfied that the trial judge made it clear that he was granting Appellees' motion in limine to exclude Nurse Gudauskas's deposition testimony only conditionally, and that Ms. Perry should offer the evidence again at trial, at which time he would reconsider its admissibility. Furthermore, when Ms. Perry made her offer of proof concerning Nurse Rouse's testimony, the arguments of counsel and the trial court's ruling were focused solely upon the admissibility of that testimony over a hearsay objection as an admission, material to prove the element of breach of duty of care. No mention was made by counsel or the court of Nurse Gudauskas's testimony or any grounds upon which it might be admitted. The argument made by Ms. Perry's counsel during the hearing on the motion in limine concerning Nurse Gudauskas's testimony was that the statement made by Dr. Brakefield was admissible to show his motive in treating Ms. Perry as he did, i.e., that it was not hearsay because it was not offered to prove the truth of the matter asserted but rather, was offered to prove Dr. Brakefield's state of mind; and secondly, Ms. Perry argued that the statement wouldimpeach Dr. Brakefield's testimony. These grounds for admission over a hearsay objection were clearly different from those put forth to support the admissibility of Nurse Rouse's testimony. No rational reading of the record, the briefs, and the applicable law can yield a conclusion that the ruling on Nurse Rouse's testimony rendered useless an offer of Nurse Gudauskas's testimony into evidence. Therefore, Ms. Perry was required to offer the testimony into evidence and obtain a ruling to which, if adverse, she could make an offer of proof and thereby preserve the issue for appeal. She did not do so and thus, has not preserved any error for review.
III. We now address Ms. Perry's third point of error. Ms. Perry's theory of recovery against Dr. Wideman was that, as her regular physician, he improperly treated her gestational diabetes so that the disease became a contributing cause in Robert Perry's death. On direct examination, Dr. Boshell testified that, based solely on his review of Ms. Perry's hospital and medical records, it was impossible for him to say whether she was suffering from gestational diabetes, but that there were strong indications that she was not. Dr. Boshell testified further on direct examination that even if Ms. Perry did have gestational diabetes, Dr. Wideman had prescribed a diet for her that brought the disease under control, and thus, that it did not harm the baby.
Dr. Boshell acknowledged that a test performed on Ms. Perry the night that she entered the hospital, approximately 30 hours before Robert Perry's death, indicated that her blood sugar level was extremely elevated, but he stated that this was no indication that she had gestational diabetes. Dr. Boshell testified that the medical records showed that, prior to the test, Ms. Perry had ingested drugs, including Celestone, and had consumed a soft drink, all of which had the effect of raising her blood sugar level. Thus, according to Dr. Boshell, the test was not a reliable indicator of the presence of the disease.
On recross-examination, Ms. Perry's counsel attempted to ask Dr. Boshell about the deposition testimony of Dr. Davis, the attending physician who ordered the test and ordered that the drugs be given. Dr. Davis had testified that the test had been given before Ms. Perry ingested the Celestone. Ms. Perry's counsel sought to determine whether that testimony, already in evidence, would have any effect on Dr. Boshell's opinion as to whether Ms. Perry had gestational diabetes. The trial court sustained the objection of Dr. Wideman's counsel to this line of questioning and prevented Ms. Perry from cross-examining Dr. Boshell on this subject.
The trial court's ruling on this evidence was reversible error. In Alabama, a party is entitled to a thorough and sifting cross-examination of the witnesses against him. Ala. Code (1975), § 12-21-137; Riley v. City ofHuntsville, 379 So.2d 557 (Ala. 1980); Coward v.McKinney, 277 Ala. 513, *Page 608 172 So.2d 538 (1965). The cross-examination is not limited to matters addressed in the witness's direct testimony, but may concern all matters relevant and material to every issue of the action. Ala.R.Civ.P. 43(b);Coward, 277 Ala. 513, 172 So.2d 538 (1965). Of course, the trial court is vested with considerable control over the scope of cross-examination, and its rulings thereon will not be reversed in the absence of a gross abuse of discretion that causes substantial injury to the objecting party. Moon v. Nolen, 294 Ala. 454, 318 So.2d 690
(1975); General Electric Co. v. Mack, 375 So.2d 452
(Ala. 1979); Watson v. City of Florala, 420 So.2d 55
(Ala. 1982); General Telephone Co. v. Cornish,291 Ala. 293, 280 So.2d 541 (1973). The trial court may not, however, limit cross-examination as to a relevant and material matter until the examining party has substantially exercised his right to question the witness thereon.Riley, 379 So.2d 557 (Ala. 1980).
In sustaining the objection, the trial court abused its discretion, deprived Ms. Perry of her right to a thorough and sifting cross-examination of Dr. Boshell, and substantially injured her case against Dr. Wideman. Dr. Boshell's testimony was obviously critical to Dr. Wideman's defense. Since that testimony was based solely on Ms. Perry's medical and hospital records, Ms. Perry's line of questioning clearly sought relevant and material answers. Further, the record reveals that Ms. Perry did not otherwise have an opportunity to elicit the same information from Dr. Boshell, or to undermine his direct testimony so as to render this line of questioning unnecessary, and, thus, had not substantially exercised her right to cross-examine the witness on this subject.
IV. We turn now to Ms. Perry's final point of error. In cross-examining Dr. Boshell, Ms. Perry's counsel ascertained that the doctor had not agreed until March 23, 1987, to give a deposition as an expert witness for Dr. Wideman. Ms. Perry's counsel then confronted Dr. Boshell with a letter from Dr. Wideman's counsel to Ms. Perry's counsel outlining Dr. Boshell's expected testimony at trial, which Ms. Perry's counsel had received on March 9, 1987. The expected testimony, as stated in the letter, corresponded to the doctor's testimony in deposition and at trial. Ms. Perry's counsel asked Dr. Boshell the following question: "[T]hat being the case, doctor, can you explain to me why this letter [from Dr. Wideman's counsel], which lays out what your expected testimony is going to be came to me March 9, 1987." We find that Dr. Wideman's objection to this question was properly sustained. This question called for an opinion or conclusion by Dr. Boshell as to how Dr. Wideman's counsel knew certain facts and why a letter was received by Ms. Perry's counsel at a particular time. A witness may not testify to the uncommunicated intent or mental operation of another, Casualty Reciprocal Exchange v. Wallace,280 Ala. 61, 189 So.2d 861 (1966); Holmes v. Holmes,212 Ala. 597, 103 So. 884 (1925); nor may a witness answer questions calling for "the mere reason, conclusion, or opinion of the witness." Anniston Banking Loan Co. v.Green, 197 Ala. 567, 570, 73 So. 81, 83 (1916).
Appellant's contention that the trial court's ruling denied her an opportunity to show what the above question sought to determine, i.e., that Dr. Boshell was testifying merely as Dr. Wideman's counsel directed, not based on his own independent medical judgment, is without merit. Certainly, a party is given wide latitude on cross-examination to test a witness's partiality, bias, or interest. Ex parteJenkins, 474 So.2d 140 (Ala. 1985); HousingAuthority of Decatur v. Decatur Land Co., 258 Ala. 607,64 So.2d 594 (1953); Sorrell v. Scheuer, 209 Ala. 268,96 So. 216 (1923). The record, however, does not indicate that the trial court's ruling limited Ms. Perry's cross-examination as she claims. The record contains questions by Ms. Perry seeking to establish bias based on Dr. Boshell's friendship with Dr. Wideman. There is nothing to suggest that the trial court would not have allowed the bias inquiry to extend into this area as well, had Ms. Perry directed it in that area by proper questions. The trial court's ruling merely *Page 609 
denied Ms. Perry the opportunity to ask an improper question.
For the foregoing reasons, we affirm the judgment against Dr. Brakefield and Brookwood OB-GYN Clinic, P.A.; reverse the judgment in favor of Dr. Wideman; and remand this case for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, ALMON, SHORES and HOUSTON, JJ., concur.