897 So.2d 303 (2004)
Betty H. WILHOITE
v.
H.D. Jimmy WILHOITE.
H.D. Jimmy Wilhoite
v.
Betty H. Wilhoite.
2020682.
Court of Civil Appeals of Alabama.
May 14, 2004.
Opinion Dismissing Appeals on Return to Remand September 24, 2004.
*304 David W. Langston of Harris, Caddell & Shanks, P.C., Decatur, for appellant/cross-appellee Betty H. Wilhoite.
*305 Sherryl Snodgrass Caffey, Normal, for appellee/cross-appellant H.D. Jimmy Wilhoite.
MURDOCK, Judge.
Betty H. Wilhoite, the wife, appeals from a divorce judgment entered by the Lawrence Circuit Court. H.D. Jimmy Wilhoite, the husband, cross-appeals. Because we remand this cause to the trial court for clarification of its judgment, we set out only those facts necessary to our order.
The parties married in 1961. They separated in March 2001. In April 2001, the wife filed a petition for protection from abuse in the Lawrence Circuit Court (case no. DR-01-76), alleging that the husband had caused her bodily injury and that he had threatened to cause her bodily injury. After holding an initial hearing on the wife's petition, the trial court entered an order setting her petition for trial.
In June 2001, the husband filed a complaint for a divorce (case no. DR-01-76.01) on the ground of incompatibility of temperament and on the ground that the wife had allegedly abandoned him. The husband requested that the trial court award him all of the marital property. The wife filed an answer and she filed a counterclaim for a divorce alleging that the husband had "constructively evicted" her from the marital residence, that he had abandoned her by "making cohabitation unbearable," and that he had physically and mentally abused her. She requested, in part, that the trial court award her temporary and permanent alimony and that it award her all of the marital property.
After a multiday ore tenus hearing, the trial court, in January 2003, entered a judgment stating that the wife "ha[d] proven the allegations of abuse" as described in her petition for protection from abuse and enjoining the husband "from threatening to commit or committing acts of abuse ... against [the wife]." The judgment also granted the parties a divorce on the ground of incompatibility of temperament. The trial court noted that the parties had no marital debts and that the parties were "bitterly in dispute" as to the value and division of their marital property. The trial court awarded the husband 79 acres of real property that contained the marital residence (which was in need of repair), a rental home, three rental manufactured homes, a barn, and some storage buildings; the trial court determined that the property and improvements had a value of $175,000.[1] The trial court also awarded the husband 65% of all cash, certificates of deposit, stocks, bonds, savings accounts, or checking accounts in the name of either party. Further, the trial court awarded the husband a 1998 Ford Ranger truck; one-half of the net sales proceeds from the sale of 14 other automobiles that the husband owned; one-half of the net sales proceeds from the sale of the parties' musical instruments and equipment; and miscellaneous items of personal property.
The trial court awarded the wife several parcels of real property that had a total value of $16,800; $60,000 as alimony in gross (secured by a lien on the 79 acres awarded to the husband); a 1989 Chevrolet Caprice automobile; a 1992 Ford Ranger truck; one-half of the net sales proceeds from the sale of the 14 other automobiles that the husband owned; one-half of the net sales proceeds from the sale of the parties' musical instruments and equipment; and miscellaneous items of personal property. The trial court also awarded the *306 wife 35% of all cash, certificates of deposit, stocks, bonds, savings accounts, or checking accounts in the name of either party. The trial court reserved the issue of periodic alimony.[2]
In regard to the trial court's division of the parties' monetary assets, the trial court stated:
"Also in dispute is the question of any cash which cash which would have been saved during the marriage and kept in an old safe. [The wife] contends that at the time of separation that the parties had some $200,000.00 in cash in the old safe that they kept in the marital residence. [The husband] contends that he used most of the cash he had saved to pay for the education of his wife and that when the wife and others came into the marital residence in 2001 as he was in jail and that they took a number of items out of the house and possibly the money. [The husband] contends that he expended over $150,000.00 of the parties' money educating [the wife] for the six or seven years that she was working to obtain an undergraduate degree and law degree. [The wife] does not know how much money was expended for education and denies that it was any amount close to $150,000.00.
"....
"The Court notes that, even following discovery, for whatever reason, it is left to the Court's judgment as to whether or not the parties had in their possession some $200,000.00 in cash located in their safe at the time of their separation. In this instance, it is important for the Court to make findings as to the totality of evidence presented as to the question of monies that the parties may have saved over the years, looking to objective proof and any reasonable inferences from the proof presented. [The wife's] Exhibit No. 31 evidences... that the parties apparently had accumulated cash of over $98,000 in 1982. [The wife] testified that the parties, including [the husband, the wife,] and their children, over the years worked raising and selling *307 livestock. Apparently, [the husband] would also buy and sell and swap certain motor vehicles or other items and that as a result of this, [the husband] would save approximately $1,000.00 per month and did so over a 25 year period. Considering ... the numerous items of personal property acquired by the parties, it would be feasible that the parties had access to significant savings so as to make these various acquisitions over the years. [The parties' son] ... testified that on February 4, 2001, he saw approximately $180,000.00 in the safe at home. [The wife] testified that her husband would brag about how much money he had saved and that he had kept two stacks of bills located in the safe. [The wife] denied that she had at any time taken any of the money that [the husband] kept in the parties' safe.
"....
"The parties are in dispute as to what amount of cash acquired during the marriage may exist in the parties' safe or elsewhere and the Court is uncertain as to what amount of money the parties may presently have.
"It is further ORDERED that all monies in CD's, stocks, bonds or situated in savings or checking accounts in the name of either party shall be divided between the parties as follows:
"[The husband] 65%
"[The wife] 35%
"The parties shall, within 10 days of the date of this order and subject to punishment of this Court for noncompliance, indicate to counsel the amount of monies in their name or under their control or within their possession, excluding separate funds acquired by a party since separation and not being a part of marital property, so that the division of monies or its equivalent ordered in this decree may be accomplished."
(Emphasis omitted.)[3]
After the entry of the trial court's judgment, the wife filed a sworn affidavit stating that she had "zero in cash assets that would be considered marital assets" and that the husband
"[h]ad a large sum of cash in the home safe at the time of the separation of the parties in March, 2001. This cash was the life savings of the parties built up over 40-plus years of marriage.
"To the best of the [wife's] belief and knowledge, the [husband] did have around $200,000.00 in cash at the marital residence at the time of the separation in March, 2001. The parties' son ... also testified in divorce trial that there was $180,000.00 to $200,000.00 in cash at the marital residence and that he saw the said money. As of February 2003, the [wife] has not seen the $200,000.00 since the separation in March, 2001, and has no idea where any of the cash is or what [the husband] has done with the money."
Other than the husband's trial testimony, the record contains no sworn statement from the husband as to "the amount of *308 monies in his name or under his control or within his possession."
The wife also filed a postjudgment motion alleging, in part, that the trial court's division of the parties' monetary assets was inequitable and contrary to the evidence presented at trial. The husband filed a postjudgment motion alleging, in part, that the trial court's judgment, including its award of alimony in gross, "ignores the evidence that his wife took whatever funds were in the safe while he was incarcerated, and the fact that he has no resources with which to pay said sum." He also alleged that
"[t]he Court's Order that he is awarded 65% of all 65% of all monies in CD's, stocks, bonds or situated in savings or checking accounts in the name of either party is contrary to the weight and sufficiency of the evidence, as such monies do not exist. Accordingly, the Court should strike this Order from the record, as it severely prejudices him insofar as him receiving an equitable distribution of marital property."
After holding a hearing as to the parties' postjudgment motions, the trial court entered an order restraining the parties from harassing or assaulting one another and denying all other requested relief. The wife appeals. The husband cross-appeals.
The wife contends, in part, that the trial court's division of the marital property, including its division of the parties' real property and the parties' monetary assets, was inequitable. She specifically contends that she should have been awarded at least one-half of the $200,000 in cash that, she says, was in the husband's possession. The husband contends, in part, that the property awards to the wife, including the $60,000 award of alimony in gross, are inequitable and that he was not awarded an equitable amount of the marital property because, he says, the monetary assets described in the judgment do not exist and the trial court's purported award to him of 65% of the monetary assets has prejudiced him.
Matters such as alimony and property division are within the sound discretion of the trial court. Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993). A trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996), Brewer v. Brewer, 695 So.2d 1 (Ala.Civ.App.1996). This court will not reverse a trial court's division of marital property and its award of periodic alimony unless the rulings are unsupported by the evidence and, thus, amount to an abuse of discretion. Parrish, supra.
Generally, in the absence of specific findings of fact, this court will assume that the trial court made those findings necessary to support its judgment. See Ex parte Fann, 810 So.2d 631 (Ala.2001). In the present case, however, after reviewing the record, and particularly the language of the trial court's judgment, we are unable to determine what the trial court's finding was as to the existence and value, if any, of the cash that the wife and the son testified was located in the parties' safe; similarly, we are unable to determine what the trial court's finding was as to the value of the "CD's, stocks, bonds ... savings or checking accounts" that were divided between the husband and the wife on a 65%-35% basis. Accordingly, we cannot determine whether the trial court erred as to the division of the marital property or in its alimony award to the wife. We must, therefore, remand this cause to the trial court for it to clarify the judgment. See *309 Taylor v. Rollins, 842 So.2d 661 (Ala.Civ.App.2001).
Based on the foregoing, we remand this cause to the trial court for it to enter a revised judgment consistent with this opinion that explains its findings as to the matters discussed above and that includes a statement indicating what value it attributed to the financial assets that were divided between the husband (65%) and the wife (35%). Due return shall be filed with this court within 56 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.

On Return to Remand
MURDOCK, Judge.
Betty H. Wilhoite, the wife, appealed from a divorce judgment entered by the Lawrence Circuit Court. H.D. Jimmy Wilhoite, the husband, cross-appealed. We remanded this cause to the trial court for clarification of its judgment. See Wilhoite v. Wilhoite, 897 So.2d 303 (Ala.Civ.App.2004) ("Wilhoite I"). Based on the trial court's order on remand, we dismiss the parties' appeals as being from a nonfinal judgment.
The parties married in 1961. They separated in March 2001. In June 2001, the husband filed a complaint for a divorce. The wife filed an answer, and she filed a counterclaim for a divorce. After a multiday ore tenus hearing, the trial court, in January 2003, entered a judgment granting the parties a divorce on the ground of incompatibility of temperament and purporting to divide the marital assets.
In regard to the trial court's division of the parties' monetary assets, the trial court's January 2003 judgment stated:
"Also in dispute is the question of any cash which would have been saved during the marriage and kept in an old safe. [The wife] contends that at the time of separation that the parties had some $200,000.00 in cash in the old safe that they kept in the marital residence. [The husband] contends that he used most of the cash he had saved to pay for the education of his wife and that when the wife and others came into the marital residence in 2001 as he was in jail and that they took a number of items out of the house and possibly the money. [The husband] contends that he expended over $150,000.00 of the parties' money educating [the wife] for the six or seven years that she was working to obtain an undergraduate degree and law degree. [The wife] does not know how much money was expended for education and denies that it was any amount close to $150,000.00.
"....
"The Court notes that, even following discovery, for whatever reason, it is left to the Court's judgment as to whether or not the parties had in their possession some $200,000.00 in cash located in their safe at the time of their separation. In this instance, it is important for the Court to make findings as to the totality of evidence presented as to the question of monies that the parties may have saved over the years, looking to objective proof and any reasonable inferences from the proof presented. [The wife's] Exhibit No. 31 evidences... that the parties apparently had accumulated cash of over $98,000 in 1982. [The wife] testified that the parties, including [the husband, the wife,] and their children, over the years worked raising and selling livestock. Apparently, [the husband] would also buy and sell and swap certain motor vehicles or other items and that as a result of this, [the husband] would *310 save approximately $1,000.00 per month and did so over a 25 year period. Considering ... the numerous items of personal property acquired by the parties, it would be feasible that the parties had access to significant savings so as to make these various acquisitions over the years. [The parties' son] ... testified that on February 4, 2001, he saw approximately $180,000.00 in the safe at home. [The wife] testified that her husband would brag about how much money he had saved and that he had kept two stacks of bills located in the safe. [The wife] denied that she had at any time taken any of the money that [the husband] kept in the parties' safe.
"....
"The parties are in dispute as to what amount of cash acquired during the marriage may exist in the parties' safe or elsewhere and the Court is uncertain as to what amount of money the parties may presently have.
"It is further ORDERED that all monies in CD's, stocks, bonds or situated in savings or checking accounts in the name of either party shall be divided between the parties as follows:
"[The husband] 65%
"[The wife] 35%
"The parties shall, within 10 days of the date of this order and subject to punishment of this Court for noncompliance, indicate to counsel the amount of monies in their name or under their control or within their possession, excluding separate funds acquired by a party since separation and not being a part of marital property, so that the division of monies or its equivalent ordered in this decree may be accomplished."
(Emphasis omitted.)
Pursuant to the trial court's directive, the wife filed a sworn affidavit stating that she had "zero in cash assets that would be considered marital assets" and that the husband
"[h]ad a large sum of cash in the home safe at the time of the separation of the parties in March, 2001. This cash was the life savings of the parties built up over 40-plus years of marriage.
"To the best of the [wife's] belief and knowledge, the [husband] did have around $200,000.00 in cash at the marital residence at the time of the separation in March, 2001. The parties' son ... also testified in the divorce trial that there was $180,000.00 to $200,000.00 in cash at the marital residence and that he saw the said money. As of February 2003, the [wife] has not seen the $200,000.00 since the separation in March, 2001, and has no idea where any of the cash is or what [the husband] has done with the money."
Other than the husband's trial testimony, the record contains no sworn statement from the husband as to "the amount of monies in [his] name or under [his] control or within his possession."
The wife appealed to this court; the husband cross-appealed. In Wilhoite I, we stated as follows:
"The wife contends, in part, that the trial court's division of the marital property, including its division of the parties' real property and the parties' monetary assets, was inequitable. She specifically contends that she should have been awarded at least one-half of the $200,000 in cash that, she says, was in the husband's possession. The husband contends, in part, that the property awards to the wife, including the $60,000 award of alimony in gross, are inequitable and that he was not awarded an equitable amount of the marital property because, he says, the monetary assets described *311 in the judgment do not exist and the trial court's purported award to him of 65% of the monetary assets has prejudiced him."
897 So.2d at 308. We further stated:
"[A]fter reviewing the record, and particularly the language of the trial court's judgment, we are unable to determine what the trial court's finding was as to the existence and value, if any, of the cash that the wife and the son testified was located in the parties' safe; similarly, we are unable to determine what the trial court's finding was as to the value of the `CD's, stocks, bonds ... savings or checking accounts' that were divided between the husband and the wife on a 65%-35% basis. Accordingly, we cannot determine whether the trial court erred as to the division of the marital property or in its alimony award to the wife. We must, therefore, remand this cause to the trial court for it to clarify the judgment. See Taylor v. Rollins, 842 So.2d 661 (Ala.Civ.App.2001).
"Based on the foregoing, we remand this cause to the trial court for it to enter a revised judgment consistent with this opinion that explains its findings as to the matters discussed above and that includes a statement indicating what value it attributed to the financial assets that were divided between the husband (65%) and the wife (35%). Due return shall be filed with this court within 56 days of the release of this opinion."
Wilhoite I, 897 So.2d at 308-09.
On remand, the trial court entered a "Revised Order," stating:
"This Court ... inadvertently omitted use of the words `if any' in enumerating and dividing between the parties monies and its equivalent. This portion of the Court's decree should have read as follows:
"`It is FURTHER ORDERED that all monies, if any exist, in the name of either parties shall be divided between the parties 65% to the husband and 35% to the wife.'
"[The wife] and the parties' adult son contend that as late as the year 2001, the safe within the marital residence contained approximately $180,000 in cash. [The husband] ... contends that there is no cash and the cash they may have had at one time was either spent on education of [the wife], or was stolen by [the wife] and/or the parties' son during [the husband's] incarceration for contempt of Court.
"....
"The divorce trial failed to conclusively establish that either party retained large sums of cash or possessed the alleged $180,000, nor did the parties present direct proof to this Court evidencing the current existence of the amassed sum or of any large cash sums.... The evidence clearly indicates that as of 1981, [the husband and the wife] had accumulated some $107,195.42.... This Court ... is of the opinion that the money was withdrawn in 1981 to avoid income earned from being reported and was not withdrawn to be used in acquiring additional assets.... This Court ... is of the opinion that if $107,000 was withdrawn from banks and savings institutions in 1981 to avoid having income earned or interest paid reported, it is also probable that, if either party had large sums of cash in their possession at the time of trial, neither would admit it. In doing what is to be equitable, considering all of the assets of parties to a divorce, this Court is often left with a guarded opinion as to the credibility of testimony presented and its overall effect on the equitable division of assets.

*312 "This Court therefore ... concludes that at the time of trial, either [the husband] or [the wife] possessed a large sum of cash totaling at least $100,000, although the actual amount of cash remained indeterminate, and an equitable division of these monies would be 65% allocated to the husband and 35% allocated to the wife."
In deciding Wilhoite I, we assumed that the trial court had determined what assets existed and what the value of those assets were, but had failed to provide that information in its judgment. However, based on the language used by the trial court in its revised order, we must now conclude that the trial court had not, and has not, decided the amount of any cash being held by either party. Moreover, the trial court's revised order makes it clear that the trial court has not yet made any finding as to which party may be in possession of such cash and, therefore, has not yet determined which party would be obligated to make a payment to the other party under the court's proposed 65%/35% property division. Further, the trial court has not indicated what value is to be attributed to the "`CD's, stocks, bonds ... savings or checking accounts'" referenced in its January 2003 judgment.
A "final judgment is a `terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants.'" Dees v. State, 563 So.2d 1059, 1061 (Ala.Civ.App.1990) (quoting Tidwell v. Tidwell, 496 So.2d 91, 92 (Ala.Civ.App.1986)). A ruling that relates to fewer than all the parties in a case, or that determines fewer than all the claims, is ordinarily not final as to any of the parties or as to any of the claims. Rule 54(b), Ala. R. Civ. P.; see McGlothlin v. First Alabama Bank, 599 So.2d 1137 (Ala.1992); and Taylor v. Taylor, 398 So.2d 267, 269 (Ala.1981).
As we stated in McGill v. McGill, 888 So.2d 502, 504 (Ala.Civ.App.2004) (footnote omitted), "we have no way of discerning what the division of the parties' personal property might be or how that division might affect the equities under the circumstances of this case." Accord Ponds v. Ponds, 757 So.2d 463, 464-65 (Ala.Civ.App.2000) ("Because the trial court has made no determination as to how much property, if any, the [decedent's] children are to receive after [the decedent's wife's] homestead interest is set aside, the judgment before us does not finally declare the rights of the parties. Therefore, we are unable to answer the `key' question put to us by the parties on appeal."); and Potter v. Owens, 535 So.2d 173, 175 (Ala.Civ.App.1988) ("When the district court entered its order on the `issues in favor of the Defendants,' then it granted defendants' counterclaim for damages.... However, the order failed to specifically assess the amount of those damages. Consequently, not all matters before the district court were adjudicated. Thus, there was no final judgment."); see also Moody v. State ex rel. Payne, 351 So.2d 547 (Ala.1977).
Although neither party has questioned this court's jurisdiction, we must consider whether we have jurisdiction over this appeal, because "`jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.'" Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App.1997) (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)). The question whether a judgment is final is a jurisdictional question. The reviewing court, on a determination that the judgment is not final, has a duty to dismiss the case; if the appellee has not moved for a dismissal, then the court should dismiss the appeal on its own motion. See Jim Walter *313 Homes, Inc. v. Holman, 373 So.2d 869, 871 (Ala.Civ.App.1979).
In the present case, the trial court has not completely adjudicated the issue of the division of the marital property. The court has not determined the value of certain assets; moreover, it has not decided who may possess those assets and, therefore, who has an obligation to convey all or part of those assets, or their value, to the other party. The judgment appealed from is therefore not final. Accordingly, we must dismiss the parties' appeals.
APPEAL DISMISSED; CROSS-APPEAL DISMISSED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
NOTES
[1] The wife offered evidence that the 79 acres of real property and the improvements had a value of $204,000. The husband offered evidence that the real property and improvements had a value of $125,000.
[2] We note that at the time of trial the wife was 65 years old and the husband was 69 years old. The wife had an undergraduate degree from Athens State College, a law degree from Birmingham School of Law, and a paralegal degree. She had been employed at various times during the parties' marriage, but she had last worked in 1994. The husband had been receiving Social Security disability benefits since 1961, and he had also received Veteran's Administration disability benefits. In its judgment, the trial court stated:

"The husband receives a disability check of $737.00 per month from the Social Security Administration and contends that his Veteran's Administration check of $228.00 stopped June 1, 2001. It appears that presently [the husband] has living expenses of some $1,100.00 per month. It also appears that [the wife] has retirement and SSI income from the Social Security Administration of some $511.00 per month and has living expenses of approximately $1,100.00 per month....
"The Court finds that the parties have received rental income over the years and, most recently, have received rent from pastureland, rental houses, trailers and an apartment. Specifically, the parties have rented for $1,500.00 per year pastureland located on the 79 acre parcel.... Also located on the [79 acre parcel] are three rental trailers and one rental house. [The husband], in his testimony, indicated that all of the rental trailers are in disrepair and are not presently rented and would require work before they will be capable of being occupied and rented by others. The Court finds that the parties do own three two-bedroom trailers which, up until 2001, were rented for a total of some $974.00 per month and that also the rental house rented for $350.00 per month for a total rental income from the rental house and three trailers of some $1,324.00 per month. The Court finds that presently, even considering the condition of the trailers and rental house, that there is the ability for rental income to be generated from this property."
[3] The wife testified that the parties had liquidated all of their certificates of deposit in the early 1980s and that they had no savings account. She stated that they had approximately $200,000 in cash in a safe at the marital residence when the parties separated and that they also had a checking account, but that they did not deposit large sums of money into their checking account. The husband testified that there was no money in the safe at the marital residence and that the wife and the parties' son had taken any money kept at the marital residence when the husband was in jail for contempt for not paying temporary spousal support. There was no evidence that the parties owned certificates of deposit, stocks, or bonds, or that they had a savings account, at the time of trial.