THOMPSON, Presiding Judge.
Patrick Haynes (“the father”) and Ashley Haynes (“the mother”) were divorced by a September 14, 2010, judgment of the Lauderdale Circuit Court; the divorce judgment incorporated the terms of a settlement agreement reached by the parties. Pursuant to the parties’ settlement agreement, the divorce judgment awarded the mother primary physical custody of the parties’ minor child, who was not yet three years old at the time of the parties’ divorce. The divorce judgment also provided that the father have visitation with the child for one month in the fall and from January 15 through May 15 each year. At the time of the divorce, the father, who is active in the military, was assigned to a military base in Honolulu, Hawaii.
On December 3, 2010, the mother filed a petition to modify the visitation provisions of the divorce judgment; in her petition, the mother alleged that the child had experienced difficulties with the visitation arrangement. The father responded by filing a counterclaim seeking a modification of custody of the child.
The trial court conducted an ore tenus hearing. On October 17, 2011, the trial court entered a judgment in which it, among other things, made findings of fact, denied the father’s claim seeking a modification of custody, and granted the mother’s claim seeking a modification of visitation; the trial court awarded the father a standard schedule of alternating weekend visitation.[1] On November 4, 2011, the father filed a postjudgment motion.[2] The father timely appealed after the denial by *181 operation of law of his postjudgment motion.
The evidence presented by the parties at the ore tenus hearing reveals the following pertinent facts. The father is a member of the military. At the time of the hearing in this matter, the father had been stationed at a military base in Hawaii for three years and was completing that assignment. The parties did not dispute that the existing visitation provision of the divorce judgment would no longer be necessary because the father planned to move from Hawaii to a location much closer to the mother’s home in Alabama. The father disputed the mother’s evidence pertaining to whether the child had experienced difficulties with regard to the visitation schedule.
The father testified that he was to be transferred to another military base shortly after the hearing and that he had requested that he be transferred to Birmingham or to Knoxville or Memphis, Tennessee. The father explained that he expected to be transferred to either Birmingham or Knoxville because, he said, the military usually assigned a service member to his or her first or second choice. The father testified that, in anticipation of the trial court’s granting his petition to modify custody of the child, he had investigated schools in both Birmingham and Knoxville.
The parties presented some evidence regarding disputes that arose regarding visitation after the entry of the September 14, 2010, divorce judgment. The parties’ differing testimony on the facts pertaining to that issue are not relevant to the issues on appeal.
The majority of the evidence pertained to the father’s claim seeking to modify custody of the child. The father testified regarding his military career, and he presented evidence indicating that he expected to continue in his job as a planning officer for an engineering division. The father testified that, in that job, he could properly take care of the child.
The father also testified that he was engaged to be married. The father had been engaged to another woman the year before, but that relationship had ended. The father testified that he had known his fiancé for a number of years and that she had moved to Hawaii to be the child’s nanny during his custodial period in the spring of 2011. The father stated that his romantic relationship with his fiancé began after her move to Hawaii.
The mother and the child live with the mother’s parents in Lauderdale County. The mother testified that when the child was on his extended spring visit with the father in Hawaii, she attended a local community college and worked in her father’s business. At the time of the hearing, the mother was not working or enrolled in school, but she testified that she planned to register for classes in the spring of 2012.
The father alleged that the mother could not properly care for the child because, he said, she was using illegal drugs. The father testified that the mother had been in a drug-rehabilitation program on two occasions during the parties’ marriage. It is undisputed that the mother completed the second drug-rehabilitation program in June 2008, two years before the parties divorced, and that she was treated in that program for an addiction to cocaine.
The father testified that he suspected that the mother had used alcohol or drugs since the parties’ divorce, but that he had no direct knowledge of such usage because, he explained, he refused to have any contact with her. The father testified that he does not speak to the mother and that when he assists the child in telephoning *182 the mother, he dials the telephone number and then hands the telephone directly to the child.
The mother testified that she had not used cocaine since her completion of the second drug-rehabilitation program, that she attended Alcoholics Anonymous meetings approximately once each month, and that she maintained regular contact with her sponsor. The mother admitted that, in August 2011, shortly before the hearing in this matter, she tested positive for the use of marijuana. The mother testified that she had used a small amount of that drug at a party and that the decision to do so was “dumb.” The mother testified that she had not used any other illegal drugs since her completion of the drug-rehabilitation program in 2008 and that she would be willing to submit to drug testing at her own expense.
With regard to drinking alcohol, the mother testified on cross-examination that since completing the second drug-rehabilitation program, she had had “maybe one or two beers.” The father then immediately questioned the mother as to whether she had been intoxicated during the night “of this alleged rape.” It is clear from the transcript that the parties and the trial court were aware of the “alleged rape” incident and that it occurred sometime after the mother had completed the second drug-rehabilitation program but before the parties had divorced. The trial court rejected the father’s attempts to present evidence regarding that incident, and, therefore, the record contains no evidence regarding it. Before excluding that evidence, the trial court confirmed that the mother was conceding that she had consumed alcohol on the night of that incident. Also on questioning from the trial court, the mother stated that she had not consumed alcohol since the night of the alleged rape incident.
In its judgment, the trial court concluded that the mother had demonstrated a substantial change "of circumstances warranting a change in the visitation award. The trial court determined, however, that no material change in circumstances had occurred that warranted a change in the primary physical custody of the child, and, therefore, it denied the father’s claim seeking a custody modification.
The father argues on appeal that the trial court erred in excluding certain evidence. The father contends that the trial court excluded that evidence because, he asserts, it erroneously concluded that it could not consider evidence pertinent to the time before the parties divorced. In his brief on appeal, the father cites one appellate case, Blume v. Durrett, 703 So.2d 986, 988 (Ala.Civ.App.1997), for the proposition that when the trial court does not hear evidence on the issue of custody, but, rather, the parties reach a settlement agreement that is incorporated into a divorce judgment, the court may consider the parties’ predivorce conduct in a custody-modification action. This court has explained that “facts existing at the time of the original divorce [judgment] but not disclosed at that time may be considered by the court in a subsequent [custody] modification proceeding, even though these facts do not relate to a change of circumstances subsequent to the original divorce ^judgment].” Wilson v. Wilson, 408 So.2d 114, 116 (Ala.Civ.App.1981).
The trial court expressly stated that it was aware of the precedent allowing it to consider the parties’ predivorce conduct under the facts of this case. However, as the father points out, the trial court excluded certain evidence even in light of that precedent. As is explained below, we cannot hold that, under the facts of this case, the trial court erred in doing so.
*183 With regard to this issue, the father first takes issue with the trial court’s exclusion of his evidence concerning the circumstances of the alleged rape incident. In his brief on appeal, the father makes a few representations about that incident, but, as already indicated in this opinion, the record contains no evidence pertaining to that incident. The father requested that he be allowed to make an offer of proof about the “circumstances surrounding” that incident, and the trial court indicated that it did not want to get into the details of that incident. The father requested and was granted the opportunity to make an offer of proof regarding the evidence he wanted to present. See Wright v. Wright, 19 So.3d 901, 910 (Ala.Civ.App.2009) (Generally, in order to preserve an objection to the exclusion of evidence, the party must demonstrate what the evidence, if admitted, would have shown.). However, the father then proceeded to argue the admissibility of the evidence, and he never made the required offer of proof.
We note that there is an exception to the requirement that an offer of proof be made when it is clear that the “ ‘trial court is fully aware of the nature of the testimony’ ” to be offered or that the relevancy of the testimony is self-evident. Hennis v. Hennis, 977 So.2d 520, 526-27 (Ala.Civ.App.2007)(quoting Kilcrease v. John Deere Indus. Equip. Co., 663 So.2d 900, 902 (Ala.1995)). The father has not argued on appeal that this evidence is admissible under either of those grounds. Out of an abundance of caution, however, we note that the father argued to the trial court that the relevance of the testimony he wanted to present was to impeach the mother’s credibility concerning her use of alcohol or drugs on the night of the alleged rape incident; the father argued that the mother had represented that she had not used drugs or alcohol since her completion of the drug-rehabilitation program in 2008. Assuming, without deciding, that the trial court was aware of the nature of the evidence the father wanted to present, as is explained below, we still cannot conclude that the father has demonstrated that the trial court erred to reversal in excluding that evidence.
First, the trial court briefly questioned the mother to confirm that she conceded that she had used alcohol on the night of the alleged rape incident and that it had played a role in the manner in which the events of that night unfolded. Thus, there was no factual dispute regarding the mother’s use of alcohol on the night of that incident. The trial court asked the father if he had evidence indicating that the mother had used alcohol on any other occasion after 2008, but the father did not and does not assert that his witnesses could testify to the mother’s drug or alcohol use on any occasion other than the one involving the alleged rape incident. Thus, the evidence the father was attempting to present through several witnesses regarding that incident was cumulative of the mother’s concession that she had consumed alcohol at the time of that incident. Wilson v. Wilson, 93 So.3d 122, 131 (Ala.Civ.App.2012) (The exclusion of admissible evidence is not reversible error when that evidence is cumulative of other evidence.).
Also, the trial court expressed a disinclination to require the mother to testify regarding an alleged rape. The father has not argued to this court any basis, other than purportedly impeaching the mother’s credibility about her use of alcohol that night, for allowing testimony regarding the circumstances of such a sensitive subject. This court has stated:
“Of course, a trial court may limit cross-examination ‘that is repetitious, irrelevant, harassing, annoying, or humiliating, or concerns wholly collateral mat *184 ters.’ Riley v. City of Huntsville, 379 So.2d 557, 560 (Ala.1980). We note that ‘[t]he usual discretion vested in the trial court to control the extent of cross-examination is narrowed in proportion to the extent of the adverseness of the testimony of the witness and the value to the defendant of a disaccreditation of the witness.’ Hendrick v. State, 368 So.2d 576, 578 (Ala.Crim.App.1979).”
Wilson v. Wilson, 93 So.3d at 130. The trial court recognized the sensitive nature of the subject matter upon which the father wanted to present the testimony of several witnesses as an attempt to present evidence of the mother’s alcohol use on the night of the alleged rape incident. It determined that, given the mother’s stipulation that she had consumed alcohol that night, there was little value to the father in doing so. We cannot say that the father has demonstrated that the trial court erred in excluding that evidence.
The father also argues that the trial court should have allowed him to present evidence regarding the mother’s predi-vorce drug use. The father is correct that, under Blume v. Durrett, supra, the evidence he attempted to proffer was admissible. However, as already stated in this opinion, evidence that is admissible may be properly excluded when that evidence is cumulative. Wilson v. Wilson, supra. During the arguments of the parties on this issue, the trial court noted that it was undisputed that the mother had used illegal drugs during the parties’ marriage, that she had completed two drug-rehabilitation programs by 2008, and that the mother had consumed alcohol on the night of the alleged rape incident. The trial court verified that the father knew about all of that evidence at the time he entered into the agreement for the mother to maintain primary physical custody of the child. The trial court noted that, except her purported one-time use of marijuana during the pendency of this litigation, the mother disputed using illegal drugs or alcohol after the night of the alleged rape incident. The trial court inquired whether the father had any witnesses or evidence available tending to indicate that the mother had used alcohol or drugs since that time. The father did not present any such evidence. The trial court stated that it wanted to focus on any changes that would constitute material changes in circumstances since the parties’ divorce.
“[T]his Court will not reverse a trial court’s refusal to admit otherwise admissible evidence if the same facts are shown at trial by other means. In short, a trial court’s failure to admit cumulative evidence is merely harmless error.” City of Gulf Shores v. Harbert Int’l, 608 So.2d 348, 354 (Ala.1992). Further, “[t]he law is well settled that the ‘trial court has wide discretion to determine whether evidence is relevant, material, or remote.’ Gober v. Khalaf 628 So.2d 416, 417 (Ala.1993).” Taylor v. Hogan, 673 So.2d 453, 455 (Ala.Civ.App.1996). In this case, the mother’s predivorce conduct was shown in her own testimony and in some evidence presented by the father. The father clearly wanted to present additional evidence on that issue, but the trial court focused the evidence it would receive on whether circumstances had changed since the divorce that warranted a change in custody. We cannot say that the father has demonstrated that the additional evidence he sought to have admitted was so material or relevant to the custody-modification action that its exclusion constituted reversible error under the facts of this case.
The father also argues that the evidence does not support the denial of his custody-modification claim. The divorce judgment awarded the mother primary physical custody of the child, and, there *185 fore, in order to modify that custody arrangement, the father was required to meet the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Under that standard, the father was required to present evidence demonstrating that a change in custody would materially promote the child’s welfare and that the disruption caused by the change in custody would be offset by the advantages of that custody change. Ex parte McLendon, supra.
In his brief on appeal, the father identifies only two factual issues that he says support a custody modification. First, the father argues that the evidence indicates that the mother has not stopped using illegal drugs. He cites the mother’s positive drug test for marijuana during the pendency of this action and several references to drinking that the mother made on a social-media page. Those facts are a matter of concern. However, the mother testified that she had used marijuana once at a party and that it was a bad decision. The mother insisted that, other than that occasion, she had not used drugs or alcohol since the alleged rape incident, and there is no evidence in the record to dispute that testimony. The mother also assured the trial court that she would be willing to submit to random drug testing at her own expense.
In addition, the father also alleges that custody should be modified because, he says, the mother accused her father of sexually abusing her.[3] The mother testified that in 2008, during her participation in her second drug-rehabilitation program, she felt pressured to identify a reason she had used illegal drugs and that, as a result, she had included in her rehabilitation diary letters accusing her father of molesting her as a child. However, the mother testified that the allegations were not true and that she had not sent those letters or mentioned the allegations to her mother or her father. Although the father, in his brief on appeal, does not find the mother’s explanation of those diary entries credible, the trial court, as the trier of fact, was in the best position to observe the parties and witnesses as they testified and to draw conclusions regarding their credibility from those observations. See, e.g., Bunn v. Bunn, 628 So.2d 695, 697 (Ala.Civ.App.1993) (“In determining the weight to be accorded testimony, the trial court, as sole judge of the credibility of witnesses, considers the demeanor and apparent candor or evasiveness of the witnesses, and the trial court may disbelieve and disregard portions of testimony and should accept only that testimony it considers worthy of belief.”).
The mother presented evidence indicating that the child was doing well in the home she and the child shared with her parents. The father presented evidence indicating that the child liked his fiancé and that he and his fiancé could properly care for the child if he were awarded custody. The vast majority of the remain *186 der of the evidence pertained to the father’s allegations regarding the mother’s conduct. The record does not contain evidence tending to indicate that a change in custody would materially promote the child’s best interests. McLendon, supra.
Our supreme court has stated that an appellate court’s review of a factual issue in a custody-modification action is limited and that this court may not substitute its judgment for that of the trial court or reweigh the evidence. Ex parte Patronas, 693 So.2d 473, 474-75 (Ala.1997). The presumption in favor of the trial court’s judgment in a custody-modification action is based on the advantage that the trial court has of seeing the parties and witnesses as they testify. Thus,
“[t]his case, like all disputed custody cases, turns on the trial court’s perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses ... and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.”
Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996).
This court has carefully considered the evidence and the arguments of the parties, especially in light of the evidence concerning the mother’s use of an illegal drug during the pendency of this custody action. It is clear that each of the parties loves the child and wants the child to be happy. The trial court, after receiving testimony, determined that the evidence the parties presented did not warrant a modification of custody. Given the evidence in the record on appeal and the presumption in favor of the trial court’s resolution of the factual issues, we cannot say that the father has demonstrated that the trial court erred in determining that he had not met the Ex parte McLendon standard and, therefore, in denying his claim seeking to modify custody of the child.
The father last argues that the trial court’s judgment is “impracticable” and should be set aside pursuant to Rule 60(b)(2), Ala. R. Civ. P. The father argues that, after the hearing in this matter, he discovered that he had not been assigned to either of the cities to which he had told the trial court he would be transferred. Rather, he represents in his brief that he now resides in Atlanta and that the distance for him to travel to exercise the trial court’s visitation award is farther away than he had anticipated. The father also represents that the trial court failed to address this issue when he purportedly raised it in a postjudgment motion and that that motion was purportedly denied by operation of law.
The record indicates that on February 13, 2012, the father filed a motion, purportedly pursuant to Rule 59, Ala. R. Civ. P., and “Rule 60(b)[, Ala. R. Civ. P.,]” titled “amended motion to alter, amend, or vacate judgment, or in alternative, new trial.” In that motion, the father stated that he lived in Atlanta, and he requested that the trial court order that his mother be allowed to pick up the child for the alternating-weekend visitation awarded in the October 17, 2011, judgment. The father did not seek the relief he seeks on appeal, i.e., that the visitation provision be set aside. Further, the father did not seek that relief in a later “amendment” to the post-judgment motion filed on March 1, 2012.
Further, the February 13, 2012, “amended” motion was filed far in excess of the 30 days allowed by Rule 59(e), Ala. R. Civ. P., to seek the modification of a judgment. The father’s original, November 4, 2011, postjudgment motion was denied by operation of law on February 2, 2012. Thus, the trial court lost jurisdiction after that date to modify its judgment and could not have properly subsequently *187 ruled on any purported “amendments” to the timely filed postjudgment motion. Weaver v. Weaver, 4 So.3d 1171, 1174 (Ala.Civ.App.2008).
The father briefly asserts on appeal that he sought relief under Rule 60(b)(2), Ala. R. Civ. P., which allows relief from a judgment in certain circumstances when evidence is newly discovered. We need not determine whether the father’s motion was, in substance, a Rule 60(b) motion. See Ex parte Alfa Mut. Gen. Ins. Co., 684 So.2d 1281, 1282 (Ala.1996) (the substance, rather than the title, of a motion governs the nature of the motion). Even assuming that that motion was made pursuant to Rule 60(b), the trial court has not ruled on that motion, and there is no final order from which to appeal. Rhodes v. Rhodes, 38 So.3d 54, 63 (Ala.Civ.App.2009). Thus, for the reasons set out in this opinion, the trial court’s judgment is affirmed.
AFFIRMED.
PITTMAN, J., concurs.
BRYAN, THOMAS, and MOORE, JJ., concur in the result, without writings.

. As is explained later in this opinion, at the hearing the father presented evidence indicating that he planned to move from Hawaii to Alabama or Tennessee.

. The father later filed what he characterized as “amendments" to that timely postjudgment motion; those filings were made on February 13, 2012, and March 1, 2012. Those "amended” motions were filed outside the 90 days allowed by Rule 59.1, Ala. R. Civ. P., for the trial court to rule on the father's timely, November 4, 2011, postjudgment motion.

. We also note that the father, for the first time on appeal, argues that the Child Custody or Domestic or Family Abuse Act, § 30-3-130 et seq., Ala.Code 1975, applies and that, under that act, there is a presumption that custody should not be awarded to the mother because she lives with her father; the father bases that argument on what he characterizes as the mother’s accusations of abuse against her father. See § 30-3-131, Ala.Code 1975 ("In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebutta-ble presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence."). This issue may not be raised for the first time on appeal.